UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL NO. 1:04-CV10243 MEL

HUDSON REALTY CAPITAL LLC, Plaintiff }
}
v. }
}
25 WIGGINS AVENUE LLC and }
LAXMAN S. DESAI, Defendants }
}

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### I.   Introduction.

Defendant Laxman Desai submits this memorandum in opposition to plaintiff's motion for summary judgment. Apart from the numerous disputed material facts appearing in the record of this case, plaintiff is not entitled to judgment as a matter of law even if the "facts" are undisputed. Therefore, plaintiff's motion for summary judgment must be denied.

### II.   Summary Judgment Standards.

On summary judgment the court is to construe all evidence in connection with the motion in the light most favorable to the nonmoving party. Horvath v. Westport Library Assn., 362 F.3d 147, 151 (2d Cir. 2004). A grant of summary judgment is appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material

1

fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Id. (internal citation and quotation marks omitted).

The record assembled for and against summary judgment demonstrates that there are numerous disputed material facts, and that plaintiff is not entitled to judgment thereon. Therefore, the motion must be denied.

### III.  Standards for Contract Interpretation.

Plaintiff declares and relies upon the letter dated July 1, 2003. If the court determines it to be an enforceable loan contract, it must be enforced according to its specific terms, if it is unambiguous. Schwanbeck v. Federal Mogul Corp., 412 Mass. 703 (1992). Whether an ambiguity exists in the letter is a matter of law for this court to determine. But, if a term or terms are ambiguous or uncertain, then the court must find the parties' intent, which is an issue of fact. Seaco Insurance Company v. Barbosa, 435 Mass. 772 (2002).

Applying these standards, the court may not determine on summary judgment that the "letter of intent" is a contract to make a loan, nor can it find an agreement to make a loan existed between these parties. The "so-called" terms and conditions were never mutually assented to with reasonable certainty. Kravetz v. Merchants Distrib, Inc. 387

Mass. 457, 460, 440 N.E.2d 1278, 1280 (1982); Rosenfield v. United States Trust Co., 290 Mass. 210, 195 N.E.2d 323 (1935). Therefore, the motion for summary judgment must be denied.

### IV.     **Preliminary Statement.**

Defendant Laxman Desai is not liable to plaintiff for a "break-up" fee or for any other fee or expense in connection with the "term sheet"/"letter of intent" dated and signed on or about July 1, 2003. No loan was ever committed to defendant or actually made to defendant by plaintiff. The negotiation conducted by these parties for the proposed loan was unsuccessful. The "term sheet"/"letter of intent" expired on July 31, 2003, because the contemplated transaction did not occur. It was not renewed or extended by the parties. After July 31, 2003, defendant was free to make other financing arrangements, without further obligation whatsoever.

The record of this case is replete with disputed facts. There was no actual loan agreement which had been committed to. The amount of the loan was never established, nor was the collateral to secure loan repayment identified and agreed upon by the parties. The "letter of intent" expired before the contemplated transaction occurred. The letter was not extended or renewed beyond July 31, 2003, time being of the essence.

Defendant did not do anything of a nefarious nature to avoid any contractual obligation. Instead, defendant acted to preserve his purchase rights by accepting Seller's option offer of an option and a lease. Defendant had no choice to do what he did because the purchase and sales agreement was scheduled for performance and he was without sufficient funds to close it. Defendant's alternative was to forfeit his deposit.

Plaintiff cannot establish that the material facts of this case are undisputed and that it is entitled to judgment as a matter of law. Therefore, plaintiff's summary judgment motion must be denied.

### V.  Discussion.

### A.  The "Term Sheet" / "Letter of Intent" Does Not Bind Defendant To Pay a "Break-Up Fee.

The document upon which plaintiff declares and relies is not a contract by which defendant is bound. It expired of its own terms. Additionally, the document itself is vague and lacking in sufficient detail to be an enforceable loan contract. Kravetz v. Merchant's Distributors Inc., supra. The document, which plaintiff drafted, must be interpreted against the plaintiff's interest because of its vagueness, lack of detail, and ambiguity. Canam Steel Corp. v. Bowdoin Constr. Corp., 34 Mass. App. Ct. 943, 613 N.E.2d 121 (1993); Wood v. Roy Lapidus, Inc., 10 Mass. App. Ct. 761, 764, 413 N.E.2d 345, 347 (1980); Rams v. Royal Caribbean Cruise Lines, 17 F.3d 11 (1st Cir. 1994); Boston Helicopter Charter Co. v. Augusta Aviation Corp., 767 F.Supp. 363 (D. Mass. 1991).

The document is nothing more than that which it calls itself. It is a "letter of intent." What does this letter of intent require the parties to do? The document recites that plaintiff is interested in making a loan to defendant provided that plaintiff meets certain conditions. Among those are: credit worthiness, sufficient collateral and agreement as to the amount of the loan, which depends on values assigned to collateral. The document in one instance only speaks with clarity. It unambiguously states that it expires on July 31, 2003, if the contemplated transaction is not closed by that date and that "time" is of the

essence." Time restrictions imposed by the letter of intent are determinative here. Owen v. Kessler, 56 Mass. App. Ct. 466 778 N.E.2d 953 (2002).

As demonstrated by the case record, the parties negotiated during July 2003 to reach agreement on all the terms that would satisfy plaintiff. No "meeting of the minds" occurred. No loan agreement was concluded. The "letter of intent" expired, of its own terms on July 31, 2003, when the contemplated transaction, to wit: the purchase of 25 Wiggins funded by Hudson Realty Capital LLC, did not occur.

After expiration of Hudson's "letter of intent" on July 31, 2003, defendant remained bound to perform the 25 Wiggins purchase and sales agreement, or lose his deposit money. Seller had agreed to extend that closing date several times while defendant tried to secure financing from plaintiff. When it became clear to defendant that Seller would not further extend the closing date, defendant had no choice but to terminate all negotiations with Hudson Realty Capital LLC, and did so.

**B.     Hudson Realty Capital LLC Did Not Negotiate In Good Faith.**

Business transactions such as this one, governed by Massachusetts law, must be conducted in good faith. Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471-74, 583 N.E.2d 806, 819-21 (1991) (citing Drucker v. Roland Wm. Jutras Assoc., 370 Mass. 383, 385, 348, N.E.2d 763, 765 (1976); Warner Ins. Co. v. Commissioner of Ins. 406 Mass. 354, 362 n.9, 548 N.E.2d 188, 193 (1990); Fortune v. National Cash Register Co., 373 Mass. 96, 105, 346 N.E.2d 1251, 1257-58 (1977); Kerrigan v. Boston, 361 Mass. 24, 33 278 N.E.2d 387, 393-94 (1972); 37 J. Nolan Massachusetts Practice, tort Law, § 11 a 10 (1979). Here, even though defendant complied with requests for financial

information, personal information, and property information, plaintiff was never satisfied. Plaintiff continuously modified its position on which collateral would be acceptable, and the value of it. Plaintiff's continued demand that 15 Wiggins and 675 Indiantown Road be part of the collateral, even though it knew that to do so would cause defendant to violate loan agreements covering those properties proves plaintiff's lack of good faith. Plaintiff sought to procure defendant's breach of pre-existing contracts on those properties. Such acts and practices by plaintiff not only jeopardized defendant's good relations with the lenders on 15 Wiggins and 675 Indiantown Road, but would have rendered plaintiff liable for interfering in a third party's advantageous contractual relationship with defendant. King v. Driscoll, 418 Mass. 576, 587, 638 N.E.2d 488, 494-95 (1994); G.S. Enterprises, Inc. v. Falmouth Marine Inc., 410 Mass. 262, 571 N.E.2d 1363 (1991); United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 551 N.E.2d 20 (1990); See also Chemewa County Gold, Inc. v. Wnuk, 9 Mass. App. Ct. 506, 509, 402 N.E.2d 1069, 1072 (1980). ("[i]n its classic form, the tort ... involves the undoing of a business arrangement bound by contract.").

### C. There Is No "Disguised Alternate Financing Scheme."

Defendant was contractually bound to purchase 25 Wiggins, or forfeit his deposit money. The "due diligence" period had expired on that purchase and sales agreement. Defendant, not having sufficient cash to close 25 Wiggins after the Hudson "letter of intent" expired, took the only course of action which was available to him, i.e. he agreed to lease the property with an option to purchase it. This preserved defendant's hefty

investment in 25 Wiggins and provided him additional time to secure purchase money and construction financing.

Defendant applied to Commerce Bank & Trust Company for a mortgage loan and received a loan commitment letter on or about December 10, 2003, subject to stated conditions.

Defendant did not accept the Commerce loan commitment.

Ultimately, in June 2004, defendant closed on 25 Wiggins using purchase money and construction financing provided under a loan agreement with Digital Federal Employees Credit Union.

Plaintiff contends defendant employed a scheme to avoid his obligations under the "letter of intent." However, plaintiff ignores its own plain language as follows:

> "If the transaction contemplated by this letter of intent is not consumed on or before July 31, 2003, then the terms and conditions set forth herein shall thereafter expire, without further notice or act of any kind by Lender or any other party. Time shall be of the essence with respect to the foregoing expiration date and the performance by Borrower, Principal(s) and Guarantor(s) under all of the loan documents."

And further,

> "This proposal shall expire on July 1, 2003. Please indicate your acceptance of this proposal by signing and returning same with the specified moneys in the form of a bank check or wire the total sum of $15,000.00. Lender will then commence due diligence and begin initial documentation of the Loan. This proposal outlines the general terms and conditions under which Lender shall proceed and does not constitute a loan commitment, either express or implied, on behalf of Lender, and does not impose any obligation on Lender to make the loan."

Time being of the essence, the "letter of intent" expired. Defendant was free to make other loan arrangements without further obligation to Hudson. Hudson's attempt to

7

issue a "commitment" on August 27, 2004, was not only too late, but still lacking in detail as to loan terms. There was no loan commitment from Hudson and it never agreed to make a loan to defendant.

There was no subterfuge by defendant whatsoever. There was no loan made to defendant. If there was an obligation to pay a "break up" fee, there must first be, as a condition precedent to any such liability, a firm loan commitment. But, there was none. Massachusetts Mun. Wholesale Elec. Co. v. Danvers, 411 Mass. 39, 45, 577 N.E.2d 283, 287-288 (1991); Sechrest v. Safiol, 383 Mass. 568, 571, 419 N.E.2d 1384, 1386 (1981); Tilo Roofing Co. v. Pellerin, 331 Mass. 743, 746, 122 N.E.2d 460, 462 (1954); Malden Knitting Mills v. United States Rubber Co., 301 Mass. 229, 233, 16 N.E. 707, 710 (1938); Wood v. Roy Lapidus, Inc., 10 Mass. App. Ct. 761, 764, n.5, 413 N.E.2d 345, 348 n.5 (1980).

**D.    Defendant Has Paid All Fees And Expenses To Hudson.**

The "letter of intent" required defendant to pay Hudson's "due diligence" expenses and fees. Defendant has completely done so. Plaintiff provides no evidence or other documentation of any open, unpaid invoices for "due diligence expenses."

## VI.    Conclusion.

There are numerous disputed material facts appearing of record in this case. Furthermore, the undisputed facts do not entitle plaintiff to judgment in its favor, as a matter of law.

As a matter of law and discretion, therefore, plaintiff's summary judgment motion ought to be denied.

        Defendant
        By his attorney

        */s/ Robert G. Cohen*
        Robert G. Cohen BBO #090340
        188 Oaks Road
        Framingham, MA 01702
        (508) 875-0035

Dated: August 10, 2004