**EXHIBIT 10**



# Commerce Bank & Trust Company

December 10, 2003



Laxman Desai, CEO
Toxikon Corporation
15 Wiggins Ave.
Bedford, MA

Dear Dr. Desai:

We are pleased to inform you that Commerce Bank & Trust Company ("CB&T", "Lender", "Bank") has approved your request for financing for a loan to purchase real property located at 25 Wiggins Avenue, Bedford, MA. It is extended in concert with the line of credit discussed in a Commitment Letter dated December 10, 2003. This commitment is subject to the following terms and conditions:

| | |
|---|---|
| BORROWER(S): | Toxikon Corporation<br>15 Wiggins Ave.<br>Bedford, MA<br>**and/or**<br>Real Estate Trust to be Named |
| LOAN AMOUNT: | $4,000,000 Commercial Real Estate Mortgage |
| GUARANTOR(S): | Laxman Desai and Toxikon Corporation (if appropriate) |
| PURPOSE: | Finance the acquisition of the real estate located at 25 Wiggins Avenue, Bedford, MA |
| INTEREST RATE: | Federal Home Loan Bank 5/10 rate + 3.60%, fixed at the time of closing |
| COMMITMENT FEE: | 1 ½ points - $60,000 |
| COLLATERAL: | • First mortgage lien and assignment of rents and leases on the real estate located at 25 Wiggins Avenue, Bedford, MA<br>• Assignment of the beneficial interest of the 15 Wiggins Avenue Realty Trust |

- All loans to the Borrower (including Toxikon and other related entities) will be cross-collateralized, cross-guaranteed and cross-defaulted

**TERMS:** Five year note; ten year amortization

**PREPAYMENT PENALTY:** If the loan is prepaid in full or in part, then the Bank will require a payment equal to 5.00% of the then unpaid principal balance, should the loan be retired before the first year anniversary date of the promissory note; a payment equal to 4.00% of the then unpaid principal balance, should the loan be retired before the second year anniversary date of the promissory note; a payment equal to 3.00% of the then unpaid principal balance, should the loan be retired before the third year anniversary date of the promissory note; a payment equal to 2.00% of the then unpaid principal balance, should the loan be retired before the fourth anniversary date of the promissory note; and a payment equal to 1.00% of the then unpaid principal balance, should the loan be retired before the fifth year anniversary date of the promissory note.

**LATE CHARGES:** Borrower(s) shall pay to the Lender a late charge equal to five percent (5%) of any amount of principal and/or interest which is not paid within fifteen (15) days of the date when due.

**FINANCIAL REPORTING:** The Borrower(s) shall provide the Bank with the following financial information:
- Annual submission of the audited level financial statements of the Borrower, within 120 days of fiscal year end.
- Annual submission of the personal financial statement and federal tax return of the Guarantor, within 120 days of calendar year end.
- Annual submission of property rent rolls for the properties located at 15 and 25 Wiggins Ave, Bedford, MA, within 120 days of fiscal year end.
- Quarterly submission of the operating statement for the entities owning property located at 15 and 25 Wiggins Ave., Bedford, MA, within 45 days of quarter end.
- Annual tax returns for the entities owning the properties located at 15 and 25 Wiggins Ave., Bedford, MA, within 120 days of fiscal year end.

2

| | |
|---|---|
| DEPOSIT ACCOUNTS: | Borrower shall establish and maintain primary depository accounts at Commerce Bank & Trust Company. |
| APPRAISAL: | A real estate appraisal will be required on property located at 25 Wiggins Ave, Bedford, MA , satisfactory to our Bank in all respects, showing maximum loan to value of 70%. |
| CHAPTER 21E ENVIRONMENTAL STUDY: | A Chapter 21E Environmental Assessment Report will be required on the property to be mortgaged, satisfactory to our Bank in all respects. |
| INSURANCE: | The Borrower(s) shall provide a fire insurance policy including extended coverage for buildings and the building materials (Builders Risk) on the property in the amount of at least replacement cost with Lender listed as first mortgagee and loss payee. |
| FLOOD HAZARD INSURANCE | If the building or mobile home securing the loan for which you have applied is or will be located in an area with special flood hazards you will be required to obtain flood insurance coverage. The flood insurance must be maintained for the life of the loan. If you fail to purchase or renew flood insurance on the property, Federal law authorizes and requires us to purchase the flood insurance for you at your expense. At a minimum, flood insurance purchased must cover the lesser of: <br>1. The outstanding principal balance of the loan; or <br>2. The maximum amount of coverage allowed for the type of the property under the National Flood Insurance Program. Flood insurance coverage under the NFIP is limited to the overall value of the property securing the loan minus the value of the land on which the property is located. |
| SALE OF PROPERTY: | There shall be no transfer of the mortgagee premises without the prior written consent of the Bank. |

| | |
|---|---|
| COMPLIANCE WITH ZONING, ENVIRONMENTAL AND OTHER LAWS: | At least ten (10) days prior to the closing, the Borrower(s) shall submit written evidence in form and substance satisfactory to the Bank's counsel that the Premises, all improvements thereon, and the use thereof, are in compliance with all zoning laws and regulations, building codes, environmental laws and regulations, applicable to the Premises and the use thereof, and that the licenses, permits, and certificate of occupancy have been issued to permit the lawful use of the Premises as contemplated by the Borrower(s). |
| INSURANCE POLICY: | The Borrower(s) shall provide a Lenders Alta Standard Loan Policy (Additional Coverage, latest edition) from a title insurance company satisfactory to the Bank insuring as valid first lien on the mortgaged property subject only to encumbrances approved by the Bank, with deletion of the standard exceptions. |
| OPINIONS: | The Bank reserves the right to require an opinion of Borrower's counsel as to the existence and authority of Borrower, to the validity and enforceability of the Bank's right under the loan documents, and to such other matters as may be reasonably requested, such opinion to be in form and substance satisfactory to the Bank's counsel. |
| TAXES: | All taxes and assessments of whatever kind must be paid in full prior to the closing. In addition, an amount equal to one-twelfth of the annual real estate taxes will be collected on a monthly basis along with the principal and interest payment. |
| EXPENSES: | Subject only to anything to the contrary in the body of this Commitment, whether or not this Commitment is terminated for any reason, and whether or not the Loan closes, the Borrower(s) agree to pay for all expenses, fees and charges with respect to the Loan or in any way connected therewith including without limitation, appraisal fees, architect's and engineer's fees, survey costs, brokerage commissions, title costs, recording costs and stamps, inspection fees by Bank personnel or consultants and other customary and reasonable expenses as are incurred in connection with the processing and/or closing of the Loan. Payment of such costs shall be in addition to and not out of the proceeds of the application, commitment or origination fees referred to herein. |

4

| | |
|---|---|
| REPRESENTATIONS: | All representations made by the Borrower(s) to the Bank in the loan application with respect to obtaining the Loan shall be deemed to be material and relied upon by the Bank in issuing this Commitment and shall survive closing of the Loan. |
| NO ADVERSE CHANGES: | The Bank's commitment is conditioned upon there being no material adverse change in the Premises or financial condition of the Borrower(s) or any Guarantor(s). |
| APPROVALS: | The Bank's counsel shall approve each instrument or document required to be furnished by the Borrower(s) pursuant to this Commitment. The Bank or its counsel may require such further instruments, documents or assurances as they deem necessary to protect the interest of the Bank prior to or at closing or during the term of the Loan and any such documents may contain terms or provisions in addition to the terms contained in the Commitment. |
| CONFIDENTIALITY: | Except as required by law, neither this letter nor its contents will be disclosed by the Borrower publicly or privately except to those individuals who are the Borrowers' officers, employees or advisers who have a need to know as a result of being involved in the Credit Facility and then only on the condition that such matters may not be further disclosed. No one shall except as required by law, use the name of, or refer to, the Bank or any of their affiliates in any correspondence, discussions, advertisement or disclosure made in connection with the Facility without the prior written consent of the Bank. This "Loan Commitment" may not be shown to any individual employed by any Bank or Financial Institution. |

The above terms and conditions are meant as an outline only. Attached is a list of other terms and conditions required. The final terms of the loan will be established in the documentation which I will request from legal counsel upon your acceptance of these terms. The Borrower(s) will be responsible for legal costs regardless if the loan is closed. If you agree with these terms, please sign below and return to the undersigned before January 10, 2004, with a check in the amount of $2,500.00 payable to Commerce Bank & Trust Company to be applied towards the appraisal. Upon your acceptance, this commitment is valid until April 10, 2004 and must be closed before that date. Any extensions of this deadline must be made in writing. There shall not occur any material financial change in the condition of the borrower(s) prior to closing.

Thank you very much for this opportunity to be of service. If you have any questions concerning the above, please feel free to call me.

Sincerely,

Mark Azia
Vice President

ACCEPTED BY:

Toxikon Corporation

By: _____    12/31/03
Laxman Desai, CEO              Date

Nominee Trust to be Named

By: _____    12/31/03
Laxman Desai, Its              Date

_____        12/31/03
Laxman Desai, Individually     Date

6

<u>ADDENDUM TO COMMITMENT LETTER DATED DECEMBER 10, 2003
CONCERNING FINANCING TO
TOXIKON CORPORATION OR REAL ESTATE TRUST TO BE NAMED</u>

In addition to the terms and conditions contained in the commitment letter, the following terms and conditions will be required as a part of the Bank's commitment and loan closing documentation:

1) Minimum debt service coverage of 1.25X, tested semi-annually on a rolling four-quarter's basis, based on a formula of:
Toxikon Earnings After Income Taxes + Depreciation & Amortization + Interest +Taxes– Withdrawals + NOI of Real Estate Entity located at 25 Wiggins Avenue, Bedford, MA divided by Current Maturities of Long Term Debt + Interest of both entities.
2) Submission of the personal financial statement of the Guarantor, prepared on a CB&T form, prior to loan closing.
3) Receipt and satisfactory CB&T review of review level financial statements of Toxikon for the third quarter end September 30, 2003, indicating no material adverse changes from the financial condition and operating results reflected in the management prepared financial statements submitted to CB&T, prior to advancement of any commercial real estate mortgage financing or increase in the line of credit.
4) Receipt and satisfactory review of the Optima Foods, Inc. lease by CB&T.
5) Borrower is to execute leases for the 15 and 25 Wiggins Avenue, Bedford, MA real estate, under terms and conditions satisfactory to CB&T.
6) The rent to Wiggins Avenue Realty Corp. by Toxikon Corp. will be capped at $240,000 when the proposed loan is closed.
7) Owner's salary, including withdrawals, shall continue to be capped at $190,000, annually.
8) Owner shall be permitted to draw 50% of net income after the above salary and the corporate taxes are paid, provided the 3:1 total liabilities to capital ratio is maintained.
9) Life insurance on Laxman S. Desai of $1,000,000 assigned to the Bank.
10) All rental payment increases paid by Toxikon must be approved by CB&T.
11) Any change in tenant mix of real property at 25 Wiggins Avenue, Bedford, MA must be approved by CB&T.
12) Reaffirm Subordination and Standstill Agreement between Toxikon Corporation and related entity – Wiggins Avenue Realty Trust.
13) All excess cash received from the sale of the real estate is to be injected into Toxikon. A minimum cash injection of $372,000 from the sale of 106 Costal Way, Jupiter, FL will be required prior to the disbursement of CB&T financing. (See item 18).
14) Receipt and satisfactory review of the executed purchase and sale agreement for the real estate located at Costal Way, Jupiter, FL. Net proceeds are to be $1,600,000 at minimum.
15) CB&T review of the potential write down of receivables due from Toxikon Europe and any other related asset to reflect no material adverse change.
16) Receipt and satisfactory review of all executed leases for the real estate located at 15 and 25 Wiggins Ave., Bedford, MA.
17) Borrower to submit $128,000 to be held in escrow by the bank for payment of taxes.

18) The company will obtain the funds required for the purchase of 25 Wiggins Avenue from:

| | |
|---|---:|
| Initial Down-Payment | $ 500,000 |
| Selling of property in Belgium | 250,000 |
| Selling 17270 West Pine, Jupiter, FL | 450,000 |
| Selling Maine property (Net) | 300,000 |
| (Not our current property on Sandy Point) | |
| Selling 106 Costal Way (Net) | 1,600,000 |
| Mortgage CB&T | 4,000,000 |
| **Total** | **$7,100,000** |

The funds will be used as follows:

| | |
|---|---:|
| 25 Wiggins Road, Bedford, MA | $4,850,000 |
| Repay Toxikon | 372,000 |
| Estimated Closing Cost | 150,000 |
| Construction to Meet Building Needs | 700,000 |
| Add. Investment in Toxikon | 450,000 |
| Net to Decide – Possible Investment in Toxikon | 450,000 |
| Est. Income Taxes | 128,000 |
| **Total** | **$7,100,000** |

19) The leasehold improvement budget of $700,000 will be funded by $500,000 by the Borrower and $200,000 by the Bank. The Borrower funds will be used prior to any Bank advance.