UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HUDSON REALTY CAPITAL<br>LLC, Plaintiff<br><br>v.<br><br>LAXMAN DESAI, Defendant | CA NO. 1:04 CV 10243 (MEL) |

### DEFENDANT'S STATEMENT OF DISPUTED FACTS PURSUANT TO L.R. 56.1

Defendant Laxman Desai (Desai) submits this Statement of Disputed Facts, pursuant to L.R. 56.1 in support of his Opposition to Plaintiff's Renewed Motion For Summary Judgment.

1. This case arises from Desai's application for a loan for purchase money financing to be used to acquire commercial property in Bedford, Massachusetts.

2. Plaintiff expressed interest in making a loan to defendant, provided terms and conditions could be agreed upon. *Term Sheet, Desai Deposition, Williams Affidavit; DiGiulio Affidavit.*

3. Plaintiff reserved for itself the month of July 2003 to do its "due diligence" to satisfy itself as to defendant's creditworthiness and assets which could secure repayment of the money to be loaned and compliance with the loan's financial covenants. *Term Sheet.*

4. The plaintiff's "term sheet" which it drafted and which it demanded Desai sign without any negotiation or change, expressly provided that it would expire on July 31, 2003 if the contemplated transaction did not occur by that date. *Term Sheet.*

5.  Plaintiff's "due diligence" during July 2003 resulted in plaintiff *not* being interested in making the loan to defendant. As of July 31, 2003, no loan terms were agreed upon, no financial covenants were agreed upon, and there was no agreement between the parties as to the collateral which Desai would have to pledge to secure repayment of and compliance with loan terms. *Desai Deposition, Williams Affidavit; DiGiulio Affidavit.*

6.  No loan was ever committed to defendant by plaintiff by July 31, 2003, or at any other time. *Desai Deposition, Williams Affidavit; DiGiulio Affidavit.*

7.  Desai was unable to complete the transaction, as contemplated, by July 31, 2003, i.e. the purchase of 25 Wiggins Avenue, because plaintiff was unwilling to commit to making a loan within the time frame required by that purchase and sales agreement. *Desai Deposition, Williams Affidavit; DiGiulio Affidavit.*

8.  The Term Sheet upon which plaintiff relies and on which it declares in this case expired on July 31, 2003, by its own express terms. Thereafter, each party was no longer bound by its terms. Plaintiff was free to commit its resources and make loans to borrowers other than Desai; and Desai was similarly free to seek loans elsewhere. *Desai Deposition, Williams Affidavit; DiGiulio Affidavit.*

9.  Desai restructured his deal with the owners of 25 Wiggins Avenue when that purchase and sales agreement expired, without extension. The restructured deal gave Desai a lease of the property and an option to purchase it all upon the terms and conditions set forth in said lease and option agreement. *Williams Affidavit; DiGiulio Affidavit.*

10. Desai no choice but to restructure his deal on 25 Wiggins Avenue as he would otherwise have forfeited a very substantial deposit on that property. *Williams Affidavit; DiGiulio Affidavit.*

11. Desai was free to seek financing, to enable him to complete his purchase of 25 Wiggins Avenue, from lenders other than the plaintiff, after July 31, 2003. *Desai Deposition, Williams Affidavit; DiGiulio Affidavit.*

12. One of the reasons, among many, that plaintiff did not commit to a loan to defendant was that Desai could not and would not pledge 15 Wiggins as additional collateral. *Desai Deposition, Williams Affidavit; DiGiulio Affidavit.*

13. Desai's time constraint on purchasing 25 Wiggins was known by plaintiff, and that explains the accelerated but time limited "due diligence" period which plaintiff conducted. *Freitas Affidavit, Desai Deposition, Williams Affidavit; DiGiulio Affidavit.*

14. Plaintiff's purpose in doing "due diligence" was to satisfy itself as to Desai's credit worthiness and to identify Desai's assets which could secure and guarantee his performance of the loan. *Freitas Affidavit.*

15. Term Sheet required Desai to pay non-refundable "due diligence" fees and to bear certain expenses that plaintiff might incur during the "due diligence" period. *Term Sheet, Freitas Affidavit, Williams Affidavit; DiGiulio Affidavit.*

16. Defendant has paid all due diligence fees and expenses he was asked to pay.

17. Desai did not seek financing for his deal from any lender other than the plaintiff during July 2003, and thereafter until late September/early October 2003, which was after the term sheet had expired, freeing Desai from that arrangement with plaintiff. *Williams Affidavit; DiGiulio Affidavit.*

18. Desai did not bind himself to pay any "break up" fee where, as in this case, it was plaintiff who did not commit to a loan and where, as in this case, the parties' agreement, expressly required, of its own terms. *Desai Deposition.*

19. Plaintiff knew Desai had to close his purchase by July 31, 2003, and that if that closing did not occur (which it did not) the agreement binding plaintiff and Desai together would expire. *Freitas Affidavit, Desai Deposition, Williams Affidavit; DiGiulio Affidavit.*

20. Desai understood the parties' agreement to obligate each of them to negotiate in good faith a loan that would enable him to close his purchase of 25 Wiggins by July 31, 2003; and that if such a loan was committed to him in good faith upon reasonable terms and conditions, he was bound to accept it. *Desai Deposition, Williams Affidavit; DiGiulio Affidavit.*

21. After July 31, 2003, there were no further loan negotiations, only discussions concerning certain unavailable collateral. Plaintiff continued to demand 15 Wiggins and 675 Indiantown as collateral even though the mortgage documents on those properties would not permit it. Plaintiff continued to insist that some way be found to get around the plain restrictions which prohibits Desai from using those properties as additional collateral for the proposed new loan. Plaintiff said that the restrictions could be avoided by an assignment of Desai's beneficial interest in those restricted properties. Desai sought advice about such an assignment, but then rejected the idea altogether because it would have been a sham event which violated both the letter and the spirit of those restrictions and would have put him into default under those mortgage documents. *Williams Affidavit; DiGiulio Affidavit.*

22. The parties' agreement, the "term sheet" implicitly required a good faith loan commitment to be made within the limited time set forth. *Term Sheet*

23. In late August 2003, some 3 ½ weeks after the parties' term sheet expired, and when it was abundantly clear to Desai that plaintiff had no good faith interest in making a loan

on terms and conditions to which he could agree, Desai notified plaintiff that he would no longer deal with HRC. *Williams Affidavit; DiGiulio Affidavit.*

24. Only after Desai had notified plaintiff in late August 2003 that he had to look elsewhere for financing did plaintiff send a letter on August 27, 2003, making a conditional loan commitment. This 8/27/03 letter did not recite specific loan terms, conditions, covenants or collateral demonstrating again that no loan was *ever* committed or agreed to. *Freitas Affidavit; Williams Affidavit; DiGiulio Affidavit.*

25. Desai was free to pursue financing for his 25 Wiggins deal with Commerce Bank in late 2003; and Commerce Bank issued a loan commitment on December 10, 2003. *Williams Affidavit; DiGiulio Affidavit.*

26. But, Desai did not close any financing transaction with Commerce Bank on 25 Wiggins because it, like plaintiff, insisted on additional collateral which defendant would not and could not provide. *Williams Affidavit; DiGiulio Affidavit.*

27. "Due diligence" fees and expenses incurred and billed to defendant by plaintiff during the applicable time have been paid. *Williams Affidavit.*

28. Desai does not owe plaintiff its fees and costs generated for a closing which never occurred or fees.

Date: December 28, 2006.

                        Respectfully submitted,
                        Defendant Laxman Desai
                        By his attorney

                        _____
                        Robert G. Cohen, Esq. BBO#090340
                        188 Oaks Road
                        Framingham, MA 01702
                        (508) 875-0035