provided, however, that this release shall be applicable and in force and effect only with respect to loss or damage occurring during such time as the releasor's policies shall contain a clause or endorsement to the effect that any such release shall not adversely affect or impair said policies or prejudice the right of the releasor to recover thereunder, and the Lessor and the Lessee each hereby agree that it shall cause such a clause or endorsement to be included in its policies, if available.

## ARTICLE XV

### Damage by Fire, Etc.

Section 1.    If either the demised premises or the Building shall be damaged or destroyed to the extent of thirty percent (30%) or less on a square footage basis by any cause (whether insured against by the Lessor or not), subject to the first Mortgagee (if any) of the Lot making the hazard insurance loss proceeds available for restoration and the Lessor's receipt of such proceeds for that purpose, the Lessor shall promptly commence and use due diligence to restore the demised premises (excluding any alterations, additions or improvements made by the Lessee pursuant to this Lease) to proper condition for the Lessee's use and occupancy, provided that the Lessor's obligation shall be limited to the amount of insurance proceeds available therefor. If the Lessor informs the Lessee that the insurance proceeds either are insufficient for restoration or are not made available to the Lessor or if the Lessor's restoration of the demised premises is not substantially completed within 180 days after the date that all permits for such restoration work are issued by applicable government authorities (which 180-day period may be extended for such period of time as the Lessor is prevent from proceeding with such restoration for any cause beyond the Lessor's control), the Lessee may terminate this Lease by giving notice to the Lessor thereof within thirty (30) days after such 180-day period, whereupon this Lease shall cease and come to an end without further liability or obligation on the part of either party unless, within such 30-day period, the Lessor completes the restoration work.

Section 2.    If either the demised premises or the Building shall be damaged or destroyed to the extent of more than thirty (30%) percent on a square footage basis by any cause (whether insured against by the Lessor or not), the Lessor or the Lessee may elect by written notice to the other within thirty (30) days after such damage or destruction occurs, whereupon this Lease shall cease and come to an end without further liability or obligation on the part of

17

either party. In the event neither party elects to so terminate this Lease, the Lessor shall restore the demised premises in accordance with the provisions of Section 1 above.

Section 3.    In the event that, the demised premises or the Building are damaged or destroyed by any cause, then, unless this Lease is terminated as above provided, the Lessee, at its own expense and proceeding with all reasonable dispatch, shall repair and replace suitably all trade fixtures, equipment, signs or other property installed by or belonging to the Lessee which shall be damaged or destroyed.

Section 4.    If this Lease is not terminated as above provided, then from and after such damage and until the demised premises are restored as above provided, the rent reserved herein shall abate, either wholly or proportionately, according to the extent that the demised premises have been rendered untenantable by such damage or destruction.

## ARTICLE XVI

### Eminent Domain

Section 1.    If, as a result of any taking by eminent domain (which shall be deemed to include a voluntary conveyance in lieu of a taking), the total floor area remaining in the demised premises shall be reduced to less than seventy-five (75%) percent of the total floor area in the demised premises at the commencement of the term hereof, or if the Lessee's access to the demised premises or parking area or the availability to the Lessee of adequate parking is materially affected, then at the election of the Lessor or the Lessee, exercisable by written notice given to the other within forty-five (45) days after the date of the filing of the notice of such taking, this Lease may be terminated as of the date when the Lessee is required to vacate the demised premises or the portion thereof so taken, notwithstanding that the entire interest of the party exercising such option may have been divested by such taking, and if following any such taking neither the Lessee nor the Lessor terminates this Lease, then:

(a)    The Lessor, at the Lessor's expense, but only to the extent of the award the Lessor received for any such taking, and proceeding with all reasonable dispatch shall do such work as may be required to put what may remain of the demised premises in proper condition for the conduct of the Lessee's business. If the award received by the Lessor on account of the taking is insufficient, as determined by a licensed architect engaged by the Lessor, to enable the Lessor to

18

make all necessary repairs, or if the Lessor elects not to make such repairs, then the Lessee shall have the right to terminate this Lease.

(b) The Lessee, at the Lessee's expense and proceeding with all reasonable dispatch, shall make such alterations, repairs and replacements of the trade fixtures, equipment, signs or other property installed by or belonging to the Lessee, as may be necessary to put the remainder of the demised premises in proper condition for the Lessee's business. The Lessor will have no responsibility for making the repairs or replacements mentioned in this subpart (b).

(c) From and after the date on which the Lessee is required to vacate the portion of the demised premises so taken, a just proportion of the rent payable herein according to the nature and extent of the taking of the demised premises shall be abated until the demised premises are restored to such condition that the Lessee can commence business therein, and from and after the date on which the Lessor shall restore the demised premises in the manner above provided the rent shall be reduced in the proportion that the floor area of the portion of the demised premises so taken bears to the floor area of the demised premises at the commencement of the term hereof. Rent will also be abated, in an amount to be determined through arbitration under Article XXII, Section 14, to the extent that access to the demised premises or parking areas or the availability to the Lessee of adequate parking is interfered with.

Section 2. In the event of a taking, as defined herein, of all or any part of the Lot, the All Purpose Easement or Building, and even though such taking leaves at least seventy-five percent (75%) or more of the floor area of the demised premises remaining, the Lessor shall nonetheless have the right to terminate this Lease by notifying the Lessee of the Lessor's election to terminate within forty-five (45) days after the final determination of the amount of the award, or to restore any part of the demised premises so taken, and in the case of such restoration, the rent shall be abated to the extent provided above.

Section 3. The Lessor reserves and excepts all rights to damages to the Lot, the All Purpose Easement, the Building, the demised premises and the leasehold hereby created, or awards with respect thereto, then or thereafter accruing, by reason of any taking by eminent domain or by reason of anything lawfully done or required by any public authority, and the Lessee grants to the Lessor all the Lessee's rights, if any, to such damages except with respect to the value of its personal property or any relocation expenses, either of which may be compensable by a separate award as provided by statute, and shall execute and deliver to the

19

Lessor such further instruments of assignment thereof as the Lessor may from time to time request.

## ARTICLE XVII
### Default

Section 1. This Lease is made on the condition that (i) if the Lessee shall fail to perform any obligation hereunder and such failure shall continue for ten (10) days after receipt of notice in payment of base rent or additional rent, or for thirty (30) days after receipt of notice of default in the case of any other obligation (or, if such default cannot reasonably be expected to be cured within thirty (30) days, shall not within such thirty-day period promptly commence to cure such default to completion with due diligence), or (ii) if the estate hereby created shall be taken on execution or other process of law, or (iii) if the Lessee shall be declared bankrupt or insolvent according to law, or (iv) if the Lessee shall make or offer to make, in or out of bankruptcy, a composition with the Lessee's creditors, or (v) if the Lessee shall make an assignment for the benefit of its creditors, or (vi) if a receiver, trustee or other officer shall be appointed to take charge of all or any substantial part of the Lessee's property by a court, or (vii) if a petition shall be filed by or against the Lessee for the reorganization of the Lessee or-for an "arrangement" under the Federal Bankruptcy Code or under any provision of the Federal Bankruptcy Code, or (viii) if such a petition shall be filed against the Lessee and shall not have been dismissed within ninety (90) days, or (ix) Purchaser shall be in default under the Option Agreement, then and in any of the said cases, notwithstanding any prior waivers or consent the Lessor lawfully may, in addition to and not in derogation of any remedies for any preceding breach of covenant, immediately or at any time thereafter and without prior demand or prior notice (1) terminate this Lease by notice in writing forthwith, or on a date stated in said notice, (2) with or without process of law enter into and upon the demised premises or any part thereof in the name of the whole and repossess the same as of the Lessor's former estate, and (3) expel the Lessee and those claiming through or under the Lessee and remove its and their effects without being deemed guilty of any manner of trespass and without prejudice to any remedies which might otherwise be used for arrears of rent or preceding breach of covenant, and upon entry as aforesaid this Lease shall terminate and the Lessor, upon reasonable notice to the Lessee, which shall have a reasonable time to move and store its chattels, may store the Lessee's chattels and those of any

20

person claiming under the Lessee at the expense and risk of the Lessee or of such person, and, if the Lessor so elects, may sell such chattels at public auction or private sale and apply the net proceeds after deduction of reasonable costs to the payments of all sums due to the Lessor hereunder, and pay over the balance, if any, to the Lessee; and in case of such termination, or termination by reason of default on the part of the Lessee, the Lessee shall at the election of the Lessor, which election may be changed at any time:

(a)    pay to the Lessor in equal monthly installments, in advance, sums equal to the aggregate rent herein provided for or, if the demised premises have been relet, sums equal to the excess of the aggregate rent herein provided for over the sums actually received by the Lessor from such reletting, as well as any expenses incurred by the Lessor as a consequence of such default or in such reletting, including but not limited to, attorneys' fees, brokers' fees and expenses of repairing and putting the demised premises in good order and condition, such sums being payable as liquidated damages for the unexpired term, hereof; or

(b)    pay to the Lessor as damages a sum which, at the time of such termination (or, at the time to which installments of liquidated damages are paid) represents the amount by which the then rental value of the demised premises is less than the aggregate rent herein provided for the residue of the term, plus (from time to time, and upon demand by the Lessor) such additional sums as are equal to the excess, if any, of the aforesaid rental value of the demised premises over the rent actually received by the Lessor for the period from such termination (or from the time to which installments of liquidated damages are paid, or from the time to which the additional sums may have been paid by the Lessee under this paragraph, whichever the case may be), to the time which the Lessor may specify in its demand hereunder, which demand shall in no event be to a time later than the expiration of the term hereof, plus, in any case, reasonable expenses of the Lessor by way of attorneys' fees, or otherwise, in connection with such default; or

(c)    indemnify the Lessor against loss of the aggregate rent herein provided for from the time of such termination (or from the time to which installments of liquidated damages are paid) to the expiration of the term hereof as above set forth, plus, in any case, reasonable expenses of the Lessor by way of attorneys' fees, or otherwise, in connection with such default.

For purposes of this Article, the phrase "aggregate rent" as used herein, shall include the base rent, and additional rents payable hereunder.

21

In the event of a default by the Lessee as above provided, if the Lessor shall elect not to terminate this Lease, it may relet the demised premises or any part or parts thereof in the name of either the Lessor or the Lessee, for a term or terms which may, at the Lessor's option, extend beyond the balance of the term of this Lease. The Lessor shall in any event have an obligation to use reasonable efforts to relet the demised premises.

Section 2.    All rights and remedies which the Lessor may have under this Lease shall be cumulative and shall not be deemed inconsistent with each other, and any two or more of such rights and remedies may be exercised at the same time insofar as permitted by law.

Section 3.    The Lessor shall not be deemed to be in default hereunder unless its default shall continue for thirty (30) days or such additional time as is reasonably required to correct its default, after written notice thereof has been given by the Lessee to the Lessor specifying the nature of the alleged default. In no event shall the Lessor be liable for consequential or incidental damages and in the event the Lessor fails to perform any of its repair obligations hereunder, its liability shall in no event exceed the reasonable cost of effecting such repairs.

Section 4.    Lessee's Right to Remedy - The Lessor shall not be in default unless and until the Lessor fails to fulfill its obligations under this Lease after proper written notification from the Lessee to the Lessor extending the Lessor a reasonable opportunity to take corrective action, but in no event less than thirty (30) days ("Default of Lessor"). Provided there then exists no default of the Lessee under the Lease and no event has occurred which with the giving of notice, or the passage of time, or both, would constitute a default of the Lessee hereunder, and this Lease is still in full force and effect, then following a Default of Lessor, the Lessee shall have the right, after the giving of not less than ten (10) days notice to the Lessor specified above, to pay such sums or do any act which requires the expenditure of money which may be necessary or appropriate to cure such Default of Lessor. In the event of the valid exercise of the foregoing right by the lessee, the Lessor agrees to reimburse the Lessee on account of all such sums expended within thirty (30) days following receipt of paid bills and any other evidence that the Lessor may reasonably require to determine that such sums were actually paid or expended by the Lessee. In the event that the Lessor shall fail to timely pay to the Lessee any sums owed the Lessee under the preceding sentence, then the Lessee shall be entitled to exercise any and all of

22

its rights and remedies against the Lessor on account thereof subject, however, to the provisions of Article XXII, Section 10 hereunder for such sums.

## ARTICLE XVIII
### Notices

Any notice or other communication relating to this Lease shall be deemed to be duly given (i) when received (or upon rejecting of receipt) if in writing and hand delivered or sent by a nationally-recognized overnight delivery service or (ii) two days after mailing, if in writing and sent by registered or certified mail, postage prepaid, return receipt requested, addressed to the party for whom it is intended at such place as shall have been last designated by such party, either in this Article or in a notice given as herein provided as its address for receiving notices hereunder. Until further notice, the Lessee designates as its address for such purpose 15 Wiggins Avenue, Bedford, Massachusetts 01730, Attn: Dr. Laxman Desai, President & CEO, with a copy to Choate, Hall & Stewart, 53 State Street, Exchange Place, Boston, Massachusetts 02109, Attn: Charles Johnson, Esq. and the Lessor designates as its address for such purpose 25 Wiggins Avenue, Bedford, Massachusetts 01730, Attn: Peter Franggos, Vice President – Finance, with a copy to (i) Stake Technology Ltd., 2838 Highway 7, Norval, Ontario Canada L0P 1K0, Attn: Steven Bromley, Vice President and CFO, (ii) Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., One Financial Center, Boston, Massachusetts 02111, Attn: Jeffrey M. Wiesen, Esq. and (iii) Dunnington, Bartholow & Miller, LLP, 666 Third Avenue, New York, New York 10017, Attn: Robert T. Lincoln, Esq., but the foregoing shall not be deemed to preclude the giving of written notice hereunder in any other manner, in which case the notice shall have been deemed to have been given when actually received by the party for whom designated.

## ARTICLE XIX
### Brokerage

The Lessor and the Lessee each warrant and represent that it has not dealt with any broker in connection with this Lease or the demised premises. The Lessee and the Lessor shall each hold the other harmless from and against any and all brokerage fees and commissions claimed by any broker on account of this Lease.

23

## ARTICLE XX

### Term "Lessee's Proportionate Share"

As used in this Lease the term "Lessee's Proportionate Share" shall mean 77.77% of the respective item so long as the Building is the only building on the Lot, and there are no additions to the Building. If any additions are made to the Building, or if any additional buildings are erected on the Lot, then such term shall mean a fraction of the respective item, the numerator of which fraction is the square footage of the demised premises and the denominator of which is the total square footage of leasehold floor area of all buildings located on the Lot.

If, upon remeasurement of the Building and the demised premises after the demised premises have been separately demised, the square footage of the Building or the demised premises, or both, shall be different than presumed in the determination of Lessee's Proportionate Share as set forth above, then the Lessee's Proportionate Share, and all other terms herein that vary based on the square footage of the Building, the demised premises, or both, shall be revised as well.

## ARTICLE XXI

### Intentionally Omitted

## ARTICLE XXII

### Miscellaneous Provisions

Section 1.    No consent or waiver, express or implied, by the Lessor to or of any breach in the performance by the Lessee or its agreements hereunder shall be construed as a consent or waiver to or of any other breach in the performance by the Lessee of the same or any other covenant or agreement. No acceptance by the Lessor of any rent or other payment hereunder, even with the knowledge of any such breach, shall be deemed a waiver thereof nor shall any acceptance of rent or other such payment in a lesser amount than is herein required to be paid by the Lessee, regardless of any endorsement on any check or any statement in any letter accompanying the payment of the same, be construed as an accord and satisfaction or in any manner other than as a payment on account of the Lessee. No reference in this Lease to any sublessee, licensee or concessionaire, or acceptance by the Lessor from other than the Lessee of any payment due hereunder shall be construed as a consent by the Lessor to any assignment or

24

subletting by the Lessee, or to give to the Lessee any right to permit another to occupy any portion of the demised premises except as herein expressly provided. No waiver by the Lessor in respect of any one tenant, shall constitute a waiver with respect to any other tenant. Failure on the part of the Lessor to complain of any action or non-action on the part of the Lessee or to declare the Lessee in default, no matter how long such failure may continue shall not be deemed to be a waiver by the Lessor of any of its rights hereunder.

     Section 2.     In no case shall mention of specific instances under a more general provision be construed to limit the generality of said provisions.

     Section 3.     If the Lessee continues to occupy the demised premises after the termination hereof, it shall have no more rights than a tenant at sufferance, but shall be liable for 125% of the aggregate rental as above determined during such occupancy.

     Section 4.     If any provision of this Lease or the application thereof to any person or circumstance shall be to any extent invalid or unenforceable the remainder of this Lease and the application to persons or circumstances other than those as to which it is invalid or unenforceable shall not be affected thereby and each term and provision of this Lease shall be valid and be enforced to the fullest extent permitted by law. Each obligation of the Lessor and the Lessee under this Lease shall be independent of any other such covenant.

     Section 5.     The Lessor agrees that upon the Lessee's paying the rent and performing and observing the agreements, conditions and other provisions on its part to be performed and observed, the Lessee shall and may peaceably and quietly have, hold and enjoy the demised premises during the term of this Lease without any manner of hindrance or molestation from the Lessor or anyone claiming under the Lessor.

     Section 6.     The conditions and agreements in this Lease contained to be kept and performed by the parties hereto shall be binding upon and inure to the benefit of said respective parties, their legal representatives, successor and assigns, and the same shall be construed as covenants running with the land. Wherever in this Lease reference is made to either of the parties, it shall be held to include and apply to the successors and assigns of such party as if in each case so expressed, unless the context requires otherwise and regardless of the number or gender of such party; provided, however, that the term "Lessor" as used in this Lease means only the owner for the time being of the Lot, so that in the event of any sale or sales of the Lot and

25

demised premises or of this Lease the Lessor shall be and hereby is entirely released of all covenants and obligations of the Lessor hereunder arising after said sale.

Section 7.    This Lease shall constitute the only agreement between the parties relative to the demised premises and no oral statements and no prior written matter not specifically incorporated herein shall be of any force or effect. In entering into this Lease, the Lessee relies solely upon the representations and agreements contained herein (if any). This Lease shall not be modified except by writing executed by both parties.

Section 8.    *[INTENTIONALLY OMITTED]*

Section 9.    The section and article headings through this instrument are for convenience and reference only and the words contained therein shall in no way be held to limit, define or describe the scope or intent of this Lease or in any way affect this Lease.

Section 10.    If the Lessor shall at any time be an individual, corporation, limited liability company, joint venture, tenancy in common, firm or partnership (general or limited), a trust or trustees of a trust, it is specifically understood and agreed that there shall be no personal liability of the Lessor or any officer, shareholder, member, manager, joint venturer, tenant, partner (general or limited), trustee, shareholder, beneficiary or holder of a beneficial interest under any of the provisions hereof or arising out of the use or occupation of the demised premises by the Lessee. In the event of a breach or default by the Lessor of any of its obligations under this Lease, the Lessee shall look solely to the equity of the Lessor in the demised premises and the Building and the Lot for the satisfaction of the Lessee's remedies, and it is expressly understood and agreed that the Lessor's liability under the terms, covenants, conditions, warranties and obligations of this Lease shall in no event exceed the loss of such equity interest. It is further understood and agreed that the liability of any party who is a Lessor (whether the original Lessor or any successor Lessor) shall be limited to defaults occurring or arising during the period for which such party shall have been a Lessor, and such party shall not be liable for defaults occurring or arising at any time before such party obtained its interest as the Lessor or after such party disposed of its interest as the Lessor.

Section 11.    Assignment or Subletting.

Provided that the Lessee is not then in default under this Lease (beyond any applicable notice and cure periods), the Lessee shall have the right, without the Lessor's approval, to assign or sublet the Premises or any portion thereof to any successor of the Lessee resulting from a

26

merger or consolidation of the Lessee and/or to any entity under the common control of Lessee including all subsidiaries and/or parent companies and/or affiliates or any entity which purchases all or substantially all of the Lessee's assets. Any assignment or sublease pursuant to the terms of this paragraph shall hereafter be referred to as a "Permitted Transfer."

The Lessee shall have the further right to assign and/or sublet the Premises or any part thereof but only with the Lessor's written consent, which consent shall not be unreasonably withheld or delayed.

In the event of a sublet or assignment of this Lease by the Lessee (including a Permitted Transfer), after the deduction of all marketing, legal and other costs incurred in said assignment and/or sublease, all profits therefrom shall be divided equally between the Lessor and the Lessee.

It shall be a condition of the validity of any such assignment or subletting (including a Permitted Transfer), that the assignee or sublessee agrees directly with the Lessor, by written instrument in form reasonably satisfactory to the Lessor, to be bound by all the obligations of the Lessee hereunder, including, without limitation, the obligation to pay rent and other amounts provided for under this Lease and the covenant against further assignment and subletting. No consent by the Lessor to an assignment, sublease or other indulgence or favor at any time granted by the Lessor to the Lessee or to anyone claiming under the Lessee, nor acceptance of rent from, or other dealing with, anyone claiming under the Lessee, shall be deemed to constitute any consent to any further assignment, sublease or otherwise or relieve the Lessee from its obligations under this Lease and Lessee hereby guarantees the prompt and timely payment of all rent, additional rent and other charges hereunder. The Lessee and all persons claiming under the Lessee shall be deemed to have waived any and all suretyship defenses. No assignment or subletting (including a Permitted Transfer) shall release the Lessee of the Lessee's obligations under this Lease or alter the primary liability of the Lessee to pay that rent and to perform all other obligations to be performed by the Lessee hereunder.

Section 12.    Intentionally Omitted.

Section 13.    Intentionally Omitted.

Section 14.    Arbitration — This Lease shall be governed and construed in accordance with the laws of the Commonwealth of Massachusetts. If any dispute, difference or question shall arise at any time between the Lessor and Lessee in respect of or in connection with this Lease, including but not limited to any abatement of rent required under Article XVI,

27

Section 1(c), then, if so elected by either party, the dispute, difference or question shall be finally settled by arbitration to be conducted in Boston, Massachusetts under the rules of the American Arbitration Association by one or more arbitrators appointed in accordance with such rules. Judgment upon the award rendered may be entered in any court having jurisdiction hereof.

*[Signatures on following page]*

IN WITNESS WHEREOF, the parties hereto have set their hands and seals to duplicates hereof, the day and year first above written.

TOXIKON CORPORATION

By: _____
Name: Laxman S. Desai
Its: President

OPTA FOOD INGREDIENTS, INC.

By: _____
Name: Arthur J. McEvily
Its: President

29

Exhibit A

<u>Lot</u>

*[attached]*



EXHIBIT A

NOTE:
ALL ELEVATIONS SHOWN REFER TO NAT'L
GEODETIC VERTICAL DATUM OF 1929.

TOXIKON CORPORATION

By: _____
Name: Layman L. DeLai
Its: President

OPTA FOOD INGREDIENTS, INC.

By: _____
Name:
Its:

ALTA/ACSM LAND TITLE SURV
PLAN OF LAND
IN
BEDFORD   MASS
(MIDDLESEX   COUNTY)
PREPARED FOR:   OPTA FOODS, INC.
SCALE: 1"=40'   OCT. 26, 1992
THE BSC GROUP - BEDFORD, INC.

Exhibit B

Plan of Demised Premises

*[attached]*



EXHIBIT B

TOXIKON CORPORATION

By: _____
Name: Laxman G. DeSai
Its: President

OPTA FOOD INGREDIENTS, INC.

By: _____
Name: Anthony S. McEvoy
Its: President

## Huygens DiMella Shaffer
and Associates, Incorporated

Architects and Planners

FLOOR FINISHES, DOORS
& PLAN DETAILS