| | |
|---|---|
| To Seller: | Opta Food Ingredients, Inc.<br>25 Wiggins Avenue<br>Bedford, MA 01730<br>Attn: Scott Kumf, CFO and COO<br>Phone: (781) 276-5100<br>Fax No.: (781) 276-5101<br>email: skumf@opta-food.com |
| and to: | Stake Technology Ltd.<br>2838 Highway 7<br>Norval, Ontario Canada L0P 1K0<br>Attn: Steven Bromley, Vice President and CFO<br>Phone: (905) 455-1990<br>Fax No.: (905) 455-2529<br>email: sbromley@staketech.com |
| With a copy to: | Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.<br>One Financial Center<br>Boston, MA 02111<br>Attn: Mary-Laura Greely, Esq.<br>     Jeffrey M. Wiesen, Esq.<br>Phone: (617) 542-6000<br>Fax No.: (617) 542-2241<br>email: mlgreely@mintz.com |
| and to: | Dunnington, Bartholow & Miller, LLP<br>666 Third Avenue<br>New York, NY 10017<br>Attn: Robert T. Lincoln, Esq.<br>Phone: (212) 682-8811<br>Fax No.: (212) 661-7769<br>email: rlincoln@dunnington.com |
| To Escrow Agent: | Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.<br>One Financial Center<br>Boston, MA 02111<br>Attn: Mary-Laura Greely, Esq.<br>     Jeffrey M. Wiesen, Esq.<br>Phone: (617) 542-6000<br>Fax No.: (617) 542-2241<br>email: mlgreely@mintz.com<br>     jmwiesen@mintz.com |

16.2.  **Governing Law**.    This Agreement shall be governed by and construed in accordance with the internal, substantive laws of the Commonwealth of Massachusetts, without regard to the conflict of laws principles thereof.

HRC    000860

16.3. **Headings**. The captions and headings herein are for convenience and reference only and in no way define or limit the scope or content of this Agreement or in any way affect its provisions.

16.4. **Effective Date**. This Agreement shall be effective upon delivery of this Agreement to the Escrow Agent, fully executed by Seller and Purchaser, which date shall be deemed the Effective Date hereof. Either party may request that the other party promptly execute a memorandum specifying the Effective Date.

16.5. **Business Days**. If any date herein set forth for the performance of any obligations of Seller or Purchaser or for the delivery of any instrument or notice as herein provided should be on a Saturday, Sunday or legal holiday, the compliance with such obligations or delivery shall be deemed acceptable on the next business day following such Saturday, Sunday or legal holiday. As used herein, the term "legal holiday" means any state or Federal holiday for which financial institutions or post offices are generally closed in the state where the Property is located.

16.6. **Counterpart Copies**. This Agreement may be executed in two or more counterpart copies, all of which counterparts shall have the same force and effect as if all parties hereto had executed a single copy of this Agreement.

16.7. **Binding Effect**. This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.

16.8. **Assignment**. Purchaser shall not have the right to assign the Agreement without Seller's prior written consent, which consent may be given or withheld in Seller's sole and absolute discretion; provided that Purchaser shall in no event be released from any of its obligations or liabilities hereunder as a result of any such assignment. Notwithstanding anything to the contrary stated above, Purchaser shall be permitted to assign its rights under this Agreement without Seller's consent to any entity in which Purchaser, any controlling stockholder of Purchaser or any entity controlling, controlled by, or under common control with Purchaser is a manager or general partner, or any entity in which one or more of the principals of Purchaser shall have a controlling interest, provided that, (i) assignee assumes Purchaser's obligations under this Agreement pursuant to a written agreement in form and substance reasonably acceptable to Seller; (ii) Seller receives a copy of such assignment and assumption agreement on or before three (3) business days after the execution thereof (and in no event less than three (3) business days prior to Closing) and reaffirms all of the representations and warranties of Purchaser herein and (iii) Purchaser shall remain liable for, and shall not be released from the performance of Purchaser's obligations under this Agreement after such assignment. Whenever reference is made in this Agreement to Seller or Purchaser, such reference shall include the successors and assigns of such party under this Agreement.

16.9. **Interpretation**. This Agreement shall not be construed more strictly against one party than against the other merely by virtue of the fact that it may have been prepared by counsel for one of the parties, it being recognized that both Seller and Purchaser have contributed substantially and materially to the preparation of this Agreement.

TRA 1770294_3.DOC                    25

HRC    000861

16.10. <u>Entire Agreement</u>. This Agreement and the Exhibits attached hereto contain the final and entire agreement between the parties hereto with respect to the sale and purchase of the Property and are intended to be an integration of all prior negotiations and understandings. Purchaser, Seller and their agents shall not be bound by any terms, conditions, statements, warranties or representations, oral or written, not contained herein. No change or modifications to this Agreement shall be valid unless the same is in writing and signed by the parties hereto. Each party reserves the right to waive any of the terms or conditions of this Agreement, which are for their respective benefit, and to consummate the transaction contemplated by this Agreement in accordance with the terms and conditions of this Agreement, which have not been so waived. Any such waiver must be in writing signed by the party for whose benefit the provision is being waived.

16.11. <u>Severability</u>. If any one or more of the provisions hereof shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

16.12. <u>Survival</u>. Except as otherwise specifically provided for in <u>Sections 4.2</u>, <u>5.1</u>, <u>5.2</u>, <u>5.3</u>, <u>5.4</u>, <u>7.3</u>, <u>7.4</u>, <u>8.3</u>, <u>8.4</u>, <u>13.1</u>, <u>13.2</u>, <u>14.1</u>, <u>15.1</u>, <u>16.15</u> and <u>16.16</u> (collectively, the "**Surviving Termination Obligations**"), the provisions of this Agreement and the representations and warranties herein shall not survive after the conveyance of title and payment of the Purchase Price but be merged therein.

16.13. <u>Exhibits</u>.   <u>Exhibits A</u> through <u>H</u> attached hereto are incorporated herein by reference.

16.14. <u>Time</u>. Time is of the essence in the performance of each of the parties' respective obligations contained herein.

16.15. <u>Limitation of Liability</u>. Seller's liability for damages arising out of any breach of the terms, covenants, conditions of this Agreement or the representations and warranties of Seller contained herein, or arising out of or from the transactions contemplated hereby, shall be limited to Five Hundred Thousand Dollars ($500,000.00), provided however, that such limitation shall not apply in the event of any intentional tortious wrongdoing by Seller. The obligations of Seller are binding only on Seller and Seller's assets and shall not be personally binding upon, nor shall any resort be had to, the private properties of any of the partners, officers, directors, shareholders or beneficiaries of Seller, or of any partners, officers, directors, shareholders or beneficiaries of any partners of Seller, or of any of Seller's employees or agents and any liability of Seller hereunder and under the documents executed and delivered by Seller at Closing shall be expressly limited as set forth in <u>Sections 7.3</u>, <u>8.2</u>, <u>8.3</u> and <u>13.1</u> of this Agreement. All documents to be executed by Seller shall also contain the foregoing exculpation.

16.16. <u>Prevailing Party</u>. Should either party employ an attorney to enforce any of the provisions hereof, (whether before or after Closing, and including any claims or actions involving amounts held in escrow), the non-prevailing party in any final judgment agrees to pay the other party's reasonable expenses, including reasonable attorneys' fees and expenses in or out of litigation and, if in litigation, trial, appellate, bankruptcy or other proceedings, expended

HRC

or incurred in connection therewith, as determined by a court of competent jurisdiction. The provisions of this Section 16.16 shall survive Closing and/or any termination of this Agreement.

### 16.17. Escrow Agreement.

16.17.1.    **Instructions**. Purchaser and Seller each shall promptly deposit a copy of this Agreement executed by such party (or either of them shall deposit a copy executed by both Purchaser and Seller) with Escrow Agent, and, upon receipt of the Deposit from Purchaser, Escrow Agent shall immediately execute this Agreement where provided below. This Agreement, together with such further instructions, if any, as the parties shall provide to Escrow Agent by written agreement, shall constitute the escrow instructions. If any requirements relating to the duties or obligations of Escrow Agent hereunder are not acceptable to Escrow Agent, or if Escrow Agent requires additional instructions, the parties hereto agree to make such deletions, substitutions and additions hereto as counsel for Purchaser and Seller shall mutually approve, which additional instructions shall not substantially alter the terms of this Agreement unless otherwise expressly agreed to by Seller and Purchaser.

16.17.2.    **Liability of Escrow Agent**. The parties acknowledge that the Escrow Agent shall be conclusively entitled to rely, except as hereinafter set forth, upon a certificate from Purchaser or Seller as to how the Deposit (which, for purposes of this Section shall be deemed to also include any other escrowed funds held by the Escrow Agent pursuant to this Agreement) should be disbursed. Any notice sent by Seller or Purchaser (the "**Notifying Party**") to the Escrow Agent shall be sent simultaneously to the other noticed parties pursuant to Section 16.1 herein (the "**Notice Parties**"). If the Notice Parties do not object to the Notifying Party's notice to the Escrow Agent within ten (10) days after the Notice Parties' receipt of the Notifying Party's certificate to the Escrow Agent, the Escrow Agent shall be able to rely on the same. If the Notice Parties send, within such ten (10) days, written notice to the Escrow Agent disputing the Notifying Party's certificate, a dispute shall exist and the Escrow Agent shall hold the Deposit as hereinafter provided. The parties hereto hereby acknowledge that Escrow Agent shall have no liability to any party on account of Escrow Agent's failure to disburse the Deposit if a dispute shall have arisen with respect to the propriety of such disbursement and, in the event of any dispute as to who is entitled to receive the Deposit, disburse them in accordance with the final order of a court of competent jurisdiction, or to deposit or interplead such funds into a court of competent jurisdiction pending a final decision of such controversy. The parties hereto further agree that Escrow Agent shall not be liable for failure to any depository and shall not be otherwise liable except in the event of Escrow Agent's gross negligence or willful misconduct. The Escrow Agent shall be reimbursed on an equal basis by Purchaser and Seller for any reasonable expenses incurred by the Escrow Agent arising from a dispute with respect to the Deposit. The obligations of each of Purchaser and Seller with respect to the Escrow Agent are intended to be binding only on such party and such party's assets and shall not be personally binding upon, nor shall any resort be had to, the private properties of any of the partners, officers, directors, shareholders or beneficiaries of such party, or of any partners, officers, directors, shareholders or beneficiaries of any partners of such party, or of any of such party's employees or agents.

HRC   000863

16.17.3. <u>Waiver of Purchaser</u>. Escrow Agent's capacity as escrowee of the Deposit shall not preclude the Escrow Agent from acting as legal counsel to Seller, and Purchaser hereby waives the right to object thereto.

**16.18.** <u>No Recording</u>. Neither this Agreement nor any memorandum or short form hereof shall be recorded or filed in any public land or other public records of any jurisdiction, by either party and any attempt to do so may be treated by the other party as a breach of this Agreement.

**16.19.** <u>Waiver of Trial by Jury</u>. The respective parties hereto shall and hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other on any matters whatsoever arising out of or in any way connected with this Agreement, or for the enforcement of any remedy under any statute, emergency or otherwise.

16.20. <u>All Property Only</u>. Seller and Purchaser hereby acknowledge that the Property is to be purchased in its entirety. In furtherance thereof, in the event that any condition precedent is not satisfied with respect to less than all of the Property, or any other condition arises with respect to less than all of the Property which entitles Purchaser to exercise its remedies under this Agreement, Purchaser shall have no right to purchase less than all of the Property.

16.21. <u>1031 Exchange</u>. Each party acknowledges that the other may elect to convey or acquire, as applicable, all or a portion of the Property in connection with the completion of a tax-deferred exchange under Section 1031 of the Internal Revenue Code of 1986. Each party hereby agrees to take such steps as the other may reasonably require in order to complete the tax-deferred exchange including, without limitation, accepting or delivering payment of all or a portion of the Purchase Price from or to a third party, provided that the party cooperating with the other's 1031 exchange shall not be required to incur any additional expense or liability as a result thereof. No party shall have any obligation to take title to any real property that is not the subject of this Agreement in order to facilitate any 1031 exchange.

**16.22.** <u>Leaseback/Lease Extension</u>. From and after the Effective Date, Seller and Purchaser agree to negotiate, in good-faith, a mutually acceptable written lease agreement whereby Purchaser shall lease back to Seller approximately 10,000 to 15,000 square feet (in a location to be mutually agreed upon) for a term of three years, at a rent of $10 per square foot on a triple net basis. The parties desire to finalize such a lease agreement on or before the expiration of the Review Period; <u>provided</u>, <u>however</u>, that in the event that the parties cannot agree on such a lease agreement on or before the Closing Date, Seller shall, for a period of up to six (6) months after the Closing, be entitled to lease such space from Landlord on such terms set forth above (not including the 3-year term). Additionally, Seller agrees to facilitate discussions with the existing tenant at the Property regarding a potential lease extension for approximately 8,000 to 10,000 square feet, provided that any such lease extension shall be subject to the prior written approval of Purchaser, which approval may be withheld in Purchaser's sole discretion. Neither the execution of a lease agreement with the Seller or a lease extension with the existing tenant shall be a condition of the sale of the Property to Purchaser.

[SIGNATURES ON THE FOLLOWING PAGE]

HRC    000864

IN WITNESS WHEREOF, the parties hereto have executed this Agreement under seal on the date or dates set forth below.

SELLER:

OPTA FOOD INGREDIENTS, INC.

By: _____
Name: _____
Its: _____

DATE: March __, 2003

Tax I.D. # 04-3117634

PURCHASER:

TOXIKON CORPORATION

By: _____
Name:
Its:

DATE: March ___, 2003

Tax I.D. # _____

TRA 1770294_3.DOC                    30

HRC   000865

Toxikon Operations                    17812711137                    P.02

IN WITNESS WHEREOF, the parties hereto have executed this Agreement under seal on the date or dates set forth below.

SELLER:

OPTA FOOD INGREDIENTS, INC.

By:_____
Name:
Its:

DATE: March ___, 2003

Tax I.D. # 04-3117634

PURCHASER:

TOXIKON CORPORATION

By:_____
Name:  Laxman S. Desai
Its:   President

DATE: March 14, 2003

Tax I.D. # 04-2772180

TRA 177029_3.DOC                    30

HRC    000866

The Escrow Agent hereby executes this Agreement for the sole purpose of acknowledging receipt of the Deposit and its responsibilities hereunder and to evidence its consent to serve as Escrow Agent in accordance with the terms of this Agreement.

**ESCROW AGENT:**

**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**

By:_____

Name:

Its: Member

HRC   000867

## LIST OF EXHIBITS

EXHIBITS

| | |
|---|---|
| Exhibit A - | Legal Description |
| Exhibit B - | Due Diligence Documents to be Delivered by Seller |
| Exhibit C - | Form of General Assignment |
| Exhibit D - | Quitclaim Deed |
| Exhibit E - | Non-Foreign Entity Certificate |
| Exhibit F - | Contracts |
| Exhibit G - | Leases |
| Exhibit H - | Form of Letter to Tenants |

TRA 1770294_3.DOC

HRC   000868

## EXHIBIT A

### LEGAL DESCRIPTION

The Land in Bedford, Middlesex County, Commonwealth of Massachusetts, known as and numbered 25 Wiggins Avenue, Bedford, Massachusetts, shown as Lot 1 on a Plan of Land dated August 25, 1997, by Joseph W. Moore Co., Land Surveyors, Civil Engineers, entitled "Compiled Plan of Land in Bedford, Mass. (Middlesex County) for Griffith Realty Trust" duly recorded at the Middlesex County (Southern District) Registry of Deeds in Book 13301, Page 558, and together bounded and described according to said Plan as follows: ..................... . .

| | |
|---|---|
| Northwesterly and Westerly: | by Wiggins Avenue by two lines measuring respectively 47.00 feet and 358.26 feet; |
| Northwesterly: | by land now or formerly of Robert W. Connelly 654.38 feet; |
| Northeasterly: | by land now or formerly of said Robert W. Connelly 157.48 feet; |
| Westerly: | by land now or formerly of said Robert W. Connelly 218 $\pm$ feet; |
| Northerly | by land now or formerly of River 200 feet; |
| Southeasterly Southerly Northeasterly and Southeasterly: | by the former center line of the Shawsheen River, by lands now or formerly Piantedosi, Flores, McNamara, Callahan & Moore 780$\pm$ feet; |
| Southwesterly: | by land now or formerly of said Griffith Bedford Realty Trust 382$\pm$ feet; |
| Southeasterly: | by land of said Griffith Bedford Realty Trust |

Containing 8.4 $\pm$ acres according to said plan.

A-1

TRA 1770294_3.DOC

HRC   000869

## EXHIBIT B

## DUE DILIGENCE DOCUMENTS

Seller shall deliver copies of the following items to Purchaser (or make certain items available to Purchaser at the Property or at the offices of the property manager), to the extent such items are in the possession of or available to the Seller and/or property manager:

1. All leases and occupancy agreements.

2. All management, maintenance, service or other contracts.

3. Current title insurance policy, together with any title exception documents, and survey.

4. All site assessment reports, environmental reports, soil reports, plans, as-built plans, engineering studies.

5. All permits, approvals and licenses.

6. Any building inspection reports

7. Any certificates of occupancy

8. Any traffic studies

9. Any zoning/permitting opinions

B-1

TRA 1770294_3.DOC

HRC   000870

EXHIBIT C

GENERAL ASSIGNMENT

THIS **GENERAL ASSIGNMENT** (the "Bill of Sale") is made as of the _____ day of
[    ], 2003 by and between Opta Food Ingredients, Inc., a Delaware corporation ("Seller"), and
Toxikon Corporation, a Massachusetts corporation ("Purchaser").

KNOW ALL MEN BY THESE PRESENTS:

Concurrently with the execution and delivery hereof, pursuant to a certain Agreement of
Purchase and Sale dated as of March 13, 2003 (the "Agreement") between Seller and Purchaser,
Seller is conveying to Purchaser all of Seller's right, title and interest in and to the real property
described on Exhibit A attached hereto and made a part hereof (the "Land") and in and to the
building, parking areas and other structures and improvements located on the Land (collectively,
the "Improvements") commonly known as and numbered 25 Wiggins Avenue, Bedford,
Massachusetts. The Land and the Improvements are hereinafter sometimes collectively referred
to as the "Property."

It is the desire of Seller to hereby sell, assign, transfer, convey, set-over and deliver to
Purchaser all of Seller's right, title and interest in and to the Assigned Property (as hereinafter
defined).

1.    Bill of Sale and Assignment.

Seller does hereby sell, assign, transfer, set-over and deliver unto Purchaser, its
successors and assigns, with special warranty of title and subject to the limitations contained in
Section 8.2 of the Agreement, all right, title and interest of Seller in and to:

a.    All machinery, equipment and fixtures, if any, owned by Seller and used
in connection with the Land as of the date hereof (the "Personal Property"), but specifically
excluding therefrom any trade fixtures of Seller, including without limitation, and equipment and
machinery that is used in connection with Seller's business operations at the Property; and

b.    Seller's interest, if any, in and to any service, equipment, supply and
maintenance contracts listed on Exhibit B attached hereto (the "Contracts"), all leases of the
Land or the Improvements listed on Exhibit C attached hereto (the "Leases"), all plans,
specifications and architectural or other drawings related to the Property (the "Plans and
Specifications") and any guarantees, licenses, approvals, certificates, permits and warranties
relating to the Real Property or the Personal Property, to the extent assignable (the "Intangible
Property"); and

c.    All deposits, security or other considerations, if any, held by Seller as
security for or in connection with the rights and benefits accruing to Seller under the Contracts
assigned.

C-1

TRA 1770294_3.DOC

TO HAVE AND TO HOLD the Personal Property, the Contracts, the Leases, the Plans and Specifications and the Intangible Property (collectively, the "Assigned Property") unto Purchaser, its successors and assigns, forever.

2.    Assumption.

Purchaser accepts the foregoing assignment and assumes and agrees to be bound by and to perform and observe all of the obligations, covenants, terms and conditions to be performed or observed under the Assigned Property arising on or after the date hereof. Purchaser further agrees to indemnify Seller and hold Seller harmless from and against any and all claims, liens, damages, demands, causes of action, liabilities, lawsuits, judgments, losses, costs and expenses (including, without limitation, attorneys' fees and expenses) (collectively, the "Losses") asserted against or incurred by Seller by reason of or arising out of any failure by Purchaser to perform or observe the obligations, covenants, terms and conditions assumed by Purchaser hereunder arising in connection with the Assigned Property and related to the period on or after the date hereof.

3.    Seller's Indemnity.

Seller agrees to indemnify Purchaser and hold Purchaser harmless from and against any and all Losses asserted against or incurred by Purchaser by reason of or arising out of any failure by Seller to perform or observe the obligations, covenants, terms and conditions of Seller arising in connection with the Assigned Property and related to the period before the date hereof.

4.    Acceptance of Property.

Purchaser hereby accepts the Assigned Property on an "AS IS, WHERE IS" AND "WITH ALL FAULTS" CONDITION AND BASIS and acknowledges that the Assigned Property has been assigned, conveyed and transferred hereunder without any representation or warranty by Seller whatsoever, except only for those limited representations and warranties contained in Article VII of the Agreement, and, to the extent permitted by applicable law, Purchaser expressly disclaims any representation or warranty implied by law.

5.    Limitation of Liability.

Seller's liability for damages arising out of any breach of this General Assignment by Seller shall be limited to Five Hundred Thousand Dollars ($500,000.00), provided however, that such limitation shall not apply in the event of any intentional tortious wrongdoing by Seller. The obligations of Seller are intended to be binding only on Seller and Seller's assets and shall not be personally binding upon, nor shall any resort be had to, the private properties of any of the partners, officers, directors, shareholders or beneficiaries of Seller, or of any partners, officers, directors, shareholders or beneficiaries of any partners of Seller, or of any of Seller's employees or agents.

6.    Exclusions from Personal Property.

It is hereby acknowledged by the parties that the Assigned Property shall not include claims relating to any real property tax refunds or rebates for periods accruing prior to the date

C-2

TRA 1770294_3.DOC

HRC    000872

hereof, existing insurance claims, and any existing claims against previous tenants of the Property, which claims are hereby reserved by Seller.

     7.    Counterpart Copies.

    This Bill of Sale may be executed in two or more counterpart copies, all of which counterparts shall have the same force and effect as if all parties hereto had executed a single copy of this Bill of Sale.

    IN WITNESS WHEREOF, the parties have caused this Bill of Sale to be executed as of the date first written above.

**SELLER:**

OPTA FOOD INGREDIENTS, INC.

By:_____

Name:

Its:

**PURCHASER:**

TOXIKON CORPORATION

By:_____

Name:

Its:

C-3

TRA 1770294_3.DOC

## EXHIBIT D

## QUITCLAIM DEED

   OPTA FOOD INGREDIENTS, INC., a Delaware corporation having its usual place of business at 25 Wiggins Avenue, Bedford, Massachusetts 01730 ("Grantor"), for consideration of Four Million Eight Hundred Fifty Thousand Dollars ($4,850,000.00) paid, grants to TOXIKON CORPORATION, a _____ corporation having an address of 15 Wiggins Avenue, Bedford, Massachusetts 01730 ("Grantee"), with QUITCLAIM COVENANTS, the land, and the buildings and improvements thereon, in Bedford, Middlesex County, Massachusetts, and more particularly described in Exhibit A attached hereto.

   Said property is conveyed with the benefit of and subject to all easements, restrictions, agreements and other matters of record, insofar as now in force and applicable, and further subject to real estate taxes for the current fiscal period not yet due and payable, which the Grantee, by its acceptance hereof, hereby agrees to assume and pay.

   [This conveyance does not represent a sale of all or substantially all of the Grantor's assets within the Commonwealth of Massachusetts.]

   For Grantor's title, see deed of _____ dated _____ and recorded with the Middlesex South District Registry of Deeds in Book _____, Page _____.

### PROPERTY ADDRESS
25 Wiggins Avenue
Bedford, Massachusetts 01730

*[Signature on following page]*

D-1

TRA 1770294_3.DOC

HRC   000874

05/22/2003  13:25    19810792497           TOXIKON CORP                PAGE  02
    May 21 03 04:02p     Toxikon Operations            17812711137            p.2

## SECOND AMENDMENT TO AGREEMENT OF PURCHASE AND SALE

THIS SECOND AMENDMENT TO AGREEMENT OF PURCHASE AND SALE (this "Amendment") is made and entered into as of the 21st day of May, 2003, by and between Opta Food Ingredients, Inc., a Delaware corporation (hereinafter referred to as 'Seller"), and Toxikon Corporation, a Massachusetts corporation (hereinafter referred to as "Purchaser").

WHEREAS, the parties hereto entered into that certain Purchase and Sale Agreement dated March 13, 2003, as amended by that certain First Amendment to Agreement of Purchase and Sale dated April 28, 2003 (as amended, the "Agreement"), whereby Seller agreed to sell to Purchaser, and Purchaser agreed to buy from Seller, the certain real property commonly known as 25 Wiggins Avenue, Bedford, Massachusetts; and

WHEREAS, the scheduled date for the Closing is scheduled for May 27, 2003; and

WHEREAS, Seller and Purchaser desire to amend the Agreement to extend the date for the Closing as more particularly set forth herein.

NOW THEREFORE, for and in consideration of the covenants, agreements and promises herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties do hereby covenant and agree as follows:

1.      Capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the Agreement.

2.      Section 4.1 of the Agreement is hereby amended by deleting the first sentence therein and replacing it with the following:

"The closing of the purchase and sale of the Property shall occur on or before 10:00 a.m. Eastern time on June 13, 2003 and shall be held at the offices of Purchaser's lender's attorney, provided the same is located in downtown Boston and further provide that Purchaser shall provide notice of such location to Seller at least five (5) business days prior to the Closing, failing which the Closing shall be at the offices of Choate, Hall & Stewart, 53 State Street, Exchange Place, Boston, Massachusetts, or at such other place agreed to by Seller and Purchaser, or by a mutually acceptable escrow arrangement with the Escrow Agent."

3.      The following shall be inserted in the Agreement after Section 4.1:

"4.1.1  Extension of Date for Closing.  Purchaser shall have the right to extend the date for the Closing for up to three (3) additional periods of fifteen (15) days each by written notice to Seller on or before the date that is two (2) business days prior to the then existing date for the Closing (each such notice is hereinafter referred to as a "Closing Extension Notice"), provided that simultaneously with each such Closing Extension Notice Purchaser shall pay to Seller an extension payment in the amount of $25,000.00 for each such extension period (each such payment is hereinafter referred to as an "Closing Extension Payment", and collectively, the "Closing Extension Payments").  If Purchaser fails to timely deliver any Closing Extension

Notice, Purchaser will be deemed to have waived Purchaser's right to then current extension right, and to any further extension rights (if applicable), and the parties will proceed to the Closing.

   4.1.2   Closing Extension Payments. Purchaser acknowledges and agrees that each Closing Extension Payment shall be (i) deemed earned when paid, and (ii) non-refundable to Purchaser (except as provided in Section 13.1 of the Agreement); provided, however, that any Closing Extension Payment made shall be credited against the Purchase Price at Closing."

   4.    Section 13.1 of the Agreement is hereby amended by deleting the last sentence of the first paragraph therein and replacing it with the following:

   "If, at the expiration of such extended time for performance, despite having used such reasonable efforts (subject to the limitations of the preceding sentence), Seller shall fail to convey title, or deliver possession, or make the Property conform, as the case may be, then the Deposit and any Closing Extension Payments (if applicable) shall be refunded to Purchaser and all obligations of parties hereto shall cease and this Agreement shall be void without recourse of the parties hereto."

   5.    Except as amended hereby the Agreement is unchanged and the Agreement as amended hereby is hereby ratified and confirmed.

   6.    This Amendment may be executed in two or more counterpart copies, all of which counterparts shall have the same force and effect as if all parties hereto had executed a single copy of this Amendment.

                    *[Signatures on following page]*

TRA 1797572_2.DOC

IN WITNESS WHEREOF, the parties hereto have executed this Amendment under seal as of the date first set forth above.

SELLER:

OPTA FOOD INGREDIENTS, INC.

By: _____
Name:
Its:

PURCHASER:

TOXIKON CORPORATION

By: _____
Name:
Its:

TRA 1797579v2

TRA 1797579_3.DOC

HRC   000877

IN WITNESS WHEREOF, the parties hereto have executed this Amendment under seal as of the date first set forth above.

SELLER:

OPTA FOOD INGREDIENTS, INC.

By: _____

Name: _____

Its: _____

PURCHASER:

TOXIKON CORPORATION

By: _____

Name: 

Its:

TRA 1797579 2.DOC