## L E A S E

THIS INDENTURE (this "Lease") made as of the 22nd day of September, 2003, by and between Opta Food Ingredients, Inc., a Delaware corporation having a principal place of business at 25 Wiggins Avenue, Bedford, Massachusetts 01730 (hereinafter with its successors and assigns called the "Lessor"), and Toxikon Corporation, a Massachusetts corporation having its principal place of business at 15 Wiggins Avenue, Bedford, MA 01730 (hereinafter with its successors and permitted assigns called the "Lessee").

### W I T N E S S E T H:

### ARTICLE I

### Premises

Section 1.    In consideration of the rents and covenants herein contained on the part of the Lessee to, be paid, performed and observed, the Lessor hereby leases to the Lessee and the Lessee hereby leases from the Lessor, subject to the terms and provisions hereinafter set forth, certain premises (hereinafter called the "demised premises"), which demised premises are more particularly shown on the plan attached hereto as Exhibit B, consisting of approximately 35,000 square feet of ground floor area in the building (hereinafter called the "Building") situated on a certain lot on 25 Wiggins Avenue in Bedford, Massachusetts (hereinafter called the "Lot"), containing 8.4± acres (See Exhibit A which is incorporated herein), together with the nonexclusive right to use, in common with others lawfully entitled thereto, the drive-ways, walkways and any loading docks on the Lot, as same may exist from time to time, subject to such reasonable rules and regulations as they may be made from time to time by the Lessor relating to the use of same. Together also with right in common with others to use for parking Lessee's Proportionate Share (as defined in Article XX hereof) of the paved parking spaces on the Lot, subject to such reasonable rules and regulations that may be made from time to time by the Lessor relating to the use of same. The Lessor shall not have any obligation to provide any policing for such parking spaces.

Section 2.    The demised premises are leased subject to the reservation to the Lessor of the roof and exterior walls of the demised premises and of the Building, and subject to the Lessor's reservation of the right (without thereby assuming the obligation) to install, maintain,

use, repair and replace (in such manner as to reduce to a minimum to the extent reasonably practicable the interference with the Lessee's use of the demised premises) all pipes, wires, meters, utility, lines and the like which now are or hereafter may be, in the judgment of the Lessor, required to be in the demised premises. The Lessor reserves the right to alter, reduce, increase and relocate such parking areas, driveways and walkways from time to time; provided, however, the Lessor shall maintain on the Lot during the term hereof a parking area of sufficient size for parking of at least one hundred (100) cars except to the extent that the size of the parking area is reduced by any taking by eminent domain. The Lessor reserves the right to make additions to the Building and to erect additional buildings and structures on the Lot, so long as, said additions do not materially interfere with the Lessee's use and occupancy of the demised premises.

## ARTICLE II

### Term and Commencement

TO HAVE AND TO HOLD the demised premises for the original term commencing on the date of this Lease (the "Commencement Date"), and expiring upon the earlier of (a) 11:59 P.M. on September 14, 2004 or (b) the termination of that certain Option Agreement of even date herewith (the "Option Agreement"), between Lessor, as seller thereunder, and Laxman S. Desai, an individual resident of Massachusetts and the controlling shareholder of Lessee, as purchaser thereunder (the "Purchaser").

## ARTICLE III

### Rent

Section 1.    YIELDING AND PAYING a base rent as follows:

Annually the amount of Three Hundred Thousand Dollars ($300,000.00), payable in equal monthly installments of Twenty-Five Thousand Dollars ($25,000.00) per month commencing on the Commencement Date. All such rent shall be payable in advance on the first day of each calendar month during the term hereof without offset or deduction and without, previous demand therefor, except as provided for in Article VIII and Article XVII, Section 4.

Notwithstanding the foregoing, so long as there exists no default of or on behalf of the Lessee under the Lease and no event has occurred which with the giving of notice, or the

2

passage of time, or both, would constitute a default of the Lessee hereunder, and this Lease is still in full force and effect, Lessee's obligation to pay base rent shall be waived.

Section 2.    The Lessee shall pay, as additional rent hereunder, during each year of the term hereof the Lessee's Proportionate Share of any and all real estate taxes and betterments and other assessments (ordinary and extraordinary) water rates, sewer and other charges which shall be imposed, assessed or levied upon the Lot and the Building and other improvements thereon. In addition, the Lessee shall pay 100% of real estate taxes due to any alterations or improvements made by the Lessee to the demised premises. The Lessee shall pay such additional rent to the Lessor in monthly installments in such amounts as the Lessor may reasonably require from time to time which installments shall be due and payable on the same dates as the rent payable hereunder, with a final adjustment to be made as soon as all bills are available for the applicable period.

If this Lease shall commence on a date other than the first day of a tax year, or terminate on a date other than the last day of a tax year, the Lessee for that tax year shall pay to the Lessor only such portion of such additional rent for the whole tax year as shall be proportionate to the portion of the tax year contained within the term of this Lease.

Section 3.    The foregoing provisions of Section 2 of this Article III are predicated upon the present system of taxation in the Commonwealth of Massachusetts. If taxes upon rentals or otherwise pertaining to the demised premises shall be substituted, in whole or in part, for the present ad valorem real estate taxes or assessed in addition thereto, then the Lessee's obligation to pay such taxes shall be based upon such substituted taxes to the extent to which the same shall be a, substitute for present ad valorem real estate taxes, together with such additional taxes. Except as hereinabove provided, nothing herein contained shall otherwise require or be construed to require the Lessee to reimburse the Lessor for any inheritance, estate, succession, transfer, gift, franchise, income or earnings, profits, excess profit tax, capital stock, capital levy or corporate or other similar tax which is or may be imposed upon the Lessor or upon the Lessor's business.

Section 4.    The Lessee shall pay to the Lessor, as additional rent, the Lessee's Proportionate Share of the reasonable costs paid or reasonably incurred by the Lessor in maintaining and repairing the Building and the Lot and the area of the "All Purpose Easement," including the portion thereof not within the Lot (hereinafter called the "All Purpose Easement",

3

which is shown on Exhibit A as a 50' wide strip of land labeled "All Purpose Easement"), and any additions to the Building, and any other buildings and structures on the Lot. Such costs shall be paid within ten (10) days after receipt of invoices from the Lessor therefor. Such costs shall include, without limitation: (1) all costs of maintaining and repairing (including, without limitation, resurfacing, striping and sweeping) the parking areas, driveways and walkways, on the Lot and any driveways within the All Purpose Easement and removing snow and ice from all of the foregoing; (2) all costs of maintaining and repairing all drainage, sewage and utility facilities and equipment within the Lot or within the All Purpose Easement whether above or underground; (3) all costs of maintaining the grass and shrubs and other planted areas and landscaping on the Lot and on the All Purpose Easement; (4) all costs of maintaining and repairing the Building and any additions thereto and any other buildings and structures on the Lot including, without limitation, maintenance and repair of roofs, foundations, walls and other structural portions, and maintenance and repair of all fixtures and equipment and utility facilities not serving exclusively the demised premises nor serving exclusively any other tenant. Notwithstanding the above, the common expenses described in this paragraph shall not include any tenant improvements, capital improvements, principal and interest payments on mortgages or any cost incurred in correcting any environmental conditions on or near the Lot.

Since that a common driveway is maintained within the All Purpose Easement serving both the Lot and adjoining land one-half of the costs of maintaining and repairing any such common driveway and any grass, and shrubs or other landscaping within the All Purpose Easement shall be excluded in determining the Lessor's costs under this Section 4.

Section 5.   The Lessee shall pay to the Lessor, as additional rent, the Lessee's Proportionate Share of the costs paid or incurred by the Lessor of taking out and maintaining insurance covering the Lot (including one-half (1/2) of the All Purpose Easement) and the Building, and any additions thereto, and any other buildings or structures on the Lot including, without limitation, fire and extended coverage insurance, flood insurance, rental value insurance, liability insurance, sprinkler insurance and boiler insurance, all in such amounts and on such forms and with such companies and against such risks as the Lessor shall reasonably determine. Such costs shall be paid within ten (10) days after receipt of invoices from the Lessor therefor.

Section 6.   The Lessee's Proportionate Share of the costs referred to in Section 4 and Section 5 of this Article III shall be paid in equal monthly installments, in an amount estimated

4

by the Lessor, on the first day of each and every calendar month, in advance. Within ninety days after the end of each fiscal year of the Lessor (meaning the twelve month period used by the Lessor in preparing its annual financial statements), the Lessor shall furnish to the Lessee a statement in reasonable detail setting forth the computation of such costs; thereupon the Lessee shall pay any deficiency, and any overpayment shall be credited to the Lessee's obligations hereunder for the then current fiscal year, or, in the case of the last year of the term, shall be refunded to the Lessee. For purposes of Section 4 and 5 of this Article III, if the Lease shall commence on a date other than the first day of the Lessor's fiscal year, or terminate on a date other than the last day of the Lessor's fiscal year, the Lessee for that fiscal year shall pay to the Lessor only a proportionate share of the Lessor's costs referred to in such Section 4 and Section 5 for the whole fiscal year as shall be proportionate to the portion of the fiscal year contained within the term of this Lease. The Lessor agrees that the costs referred to in Section 4 and Section 5 of this Article III shall not exceed generally prevailing costs in the Route 128 area for the products or service involved, but need not be the lowest available costs.

Section 7.    This is, and is intended to be, a NET LEASE, and accordingly all costs and expenses paid or incurred by the Lessor of any kind or nature whatsoever in maintaining and/or repairing the demised premises or the Building or the Lot or the All Purpose Easement (other than costs of maintaining or repairing the interior of space leased to others or available for lease to others and except as otherwise provided for herein) shall be included, in determining the Lessor's costs of which the Lessee is obligated to pay a proportionate share as provided hereinabove.

## ARTICLE IV

### Condition of the Premises

Section 1.    The condition of the demised premises is "as is," it being understood that the Lessee is fully aware of their condition and accepts same as they presently exist. Notwithstanding the foregoing, the parties acknowledge that the Lessor shall cause a demising wall to be installed to separate the demised premises from the remaining premises in the Building adjacent to the demised premises. The Lessor and the Lessee shall each be responsible for 50% of the cost to install such demising wall and any related work to so separate the demised

5

premises. The Lessee shall pay its 50% share of any such work to the Lessor within 20 days after demand therefor by the Lessor.

## ARTICLE V

### Covenants

The Lessee covenants and agrees as follows:

(a)     To pay when due the said rent and additional rent at the times and in the manner set forth herein.

(b)     To procure any licenses and permits required for any use to be made of the demised premises by the Lessee, but not a Certificate of Occupancy.

(c)     To pay promptly when due the entire cost of any work to the demised premises undertaken by the Lessee and permitted hereunder so that said premises shall at all times be free of liens for labor and materials; to procure all necessary permits before undertaking such work; to do all of such work in a good and workmanlike manner, employing new materials of good quality and complying with all governmental and insurance requirements; and to save the Lessor harmless and indemnified from all injury, loss, claims or damage to any person or property occasioned by or growing out of such work including, without limitation, reasonable attorneys' fees. If so requested by the Lessor or at its own election, the Lessee shall take over the Lessor's defense in any action related to work undertaken by, the Lessee on the demised premises.

(d)     To permit the Lessor and its agents and Mortgagee, as hereinafter defined, to examine the demised premises at reasonable times and upon reasonable notice (except no notice shall be required in the case of emergencies) and to show the demised premises to prospective purchasers or tenants, provided that the Lessor shall not thereby unreasonably interfere with the conduct of the Lessee's business; to permit the Lessor to enter said demised premises to make such repairs, improvements, alterations or additions thereto as the Lessor may elect to do, or as may be required of the Lessor under the terms of this Lease or to repair or improve systems serving other parts of the Building, provided that such entry shall not unreasonably interfere with the conduct of the Lessee's business.

(e)     To pay when due any and all state, federal or local taxes based upon the Lessee's use or occupation of the demised premises or pertaining to the Lessee's personal property or

6

resulting from any alteration, additions or improvements made by the Lessee to the demised premises.

(f)     To comply with all laws, orders, and regulations of any governmental authorities or insurance rating organizations pertaining to the demised premises and/or the Lessee's use and occupation thereof.

(g)     To refrain from doing anything, taking any action or failing to act in such a manner that will cause the rate for fire or other insurance pertaining to the demised premises or the Building to exceed the minimum rates for a building of like construction and to comply with any rules, regulations or recommendations of the National Board of Fire Underwriters, any rating bureau, or any similar association performing such function.

(h)     To keep the demised premises adequately heated for the protection of the plumbing therein.

(i)     To permit no waste with respect to the demised premises.

(j)     Definitions.  As used in this Lease, the term "Environmental Laws" shall mean any and all applicable federal, state or municipal laws, ordinances, rules and regulations now in force or subsequently enacted, modified, or amended pertaining to the protection of the environment or to health or safety risks arising therefrom, including, but not limited to, control of air pollution, water pollution, groundwater pollution, and the generation, manufacture, management, handling, use, sale, transportation, delivery, discharge, release, emission, treatment, storage, disposal or release or threatened release of Hazardous Materials (defined below).  To the extent applicable, such laws include, but are not limited to: (a) the Clean Air Act, 42 U.S.C. § 7401, et seq; (b) the Clean Water Act, 33 U.S.C. § 1251, et seq; (c) the Safe Drinking Water Act, 42 U.S.C. § 300f, et seq; (d) the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901, et seq; (e) the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, et seq; (f) the Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2601, et seq; (g)  Title III of the Superfund Amendments and Reauthorization Act ("SARA"), also known as the Emergency Planning and Community Right-to-Know Act ("EPCRA"), 42 U.S.C. § 11001; (h) the Hazardous Materials Transportation Act, 49 U.S.C. § 1801 et seq; (i) federal regulations promulgated pursuant to any of the foregoing statutes; (j) Massachusetts laws and regulations enacted in order to implement federal environmental statutes and regulations; (k) the Massachusetts Hazardous Waste

7

Management Act, M.G.L. c. 21C; (l) the Massachusetts Oil and Hazardous Materials Release Prevention and Response Act, M.G.L. c. 21E; (m) the Hazardous Substances Disclosure by Employers Act, M.G.L. c. 111F; and (n) Massachusetts regulations promulgated pursuant to the authority of applicable state environmental laws.

In addition, the term "Hazardous Materials" shall mean products, wastes and substances which, because of their quantitative concentration, chemical, radioactive, infectious or other characteristics, constitute or may reasonably be expected to constitute or contribute to a danger or hazard to public health, safety, welfare, or to the environment, including asbestos (whether or not friable), flammable materials, explosives, radioactive substances, polychlorinated biphenyls, other carcinogens, oil and other petroleum products, pollutants, solvents and chlorinated oils, pesticides, herbicides, radon gas, reactive metals and compounds, contaminants, and any other hazardous or toxic materials, chemical, biological, radioactive, or other wastes and substances.

Notwithstanding the above definitions, normal household cleaning products and maintenance materials shall not be included in any of the above.

(k)    Other than in the ordinary course of Tenant's business at the demised premises (and, which such instance shall be only in strict accordance with all applicable Environmental Laws), the Lessee shall not use, maintain, generate or bring on the demised premises, the Building or the Lot or transport or dispose of on or from the demised premises, the Building or the Lot (whether through the sewer or septic system or into the ground or by removal off-site or otherwise) any Hazardous Materials; and the Lessee shall prevent any agent, servant, employee, contractor, supplier, guest, visitor, customer or invitee of the Lessee, and of such parties, and any other party claiming under the Lessee, from using, maintaining, generating or bringing on the demised premises, the Building or the Lot or transporting or disposing of on or from the demised premises, the Building or the Lot (whether through the sewer or septic systems or into the ground or by removal off-site or otherwise) any Hazardous Material.

The Lessee shall deliver to the Lessor, within ten (10) days after the Lessee receives same, copies of all letters, inquiries, summons, subpoenas, complaints, restraining orders and any other written communication received by the Lessee, and written notice of any oral communication received by the Lessee, and written notice of any oral communication received by the Lessee, which written or oral communication relates to the Lessee's compliance

or noncompliance, or the compliance or noncompliance of any activities being conducted on or from the demised premises, with any Environmental Laws.

The Lessee shall be solely responsible for becoming informed of any amendments made from time to time to the Environmental Laws, and the Lessor shall not be obligated to notify the Lessee of any of said amendments.

Any breach of the provisions of this subparagraph (k) shall be deemed to be a breach and default of a material obligation of the Lessee under this Lease; and the Lessor shall have with respect thereto all remedies provided in this Lease for defaults of the Lessee.

## ARTICLE VI

### Use of Demised Premises

Section 1.     The Lessee shall have the right to use the demised premises for its general offices, research and development, distribution and assembly of its products, and for no other purpose whatsoever, but in no event shall the Lessee conduct at the demises premises any business use which is offensive, constitutes a nuisance or violates any provisions or any zoning, building or other applicable laws, ordinances or regulations.

Section 2.     The Lessee further agrees to conform to the following provisions during the entire term of this Lease or any extension thereof:

(a)     the Lessee shall always conduct its operations in the demised premises under its present trade name or any future trade name which is not offensive or in violation of law, unless the Lessor shall otherwise consent in writing, which consent shall not be unreasonably withheld;

(b)     the Lessee shall not permit any auction, fire, going out-of-business, or bankruptcy sales to be conducted within the demised premises without the prior written consent of the Lessor;

(c)     the Lessee shall not use the sidewalks, parking areas or other outside areas on the demised premises for advertising or business purposes without the prior written consent of the Lessor;

(d)     the Lessee shall, at its own cost and expense, be responsible for the prompt removal of all trash, refuse, and the like from the demised premises, shall insure that same be kept in covered containers at all times, and may hire, for its own use, a commercial dumpster service and place a dumpster on the Lot;

9

(e)     the Lessee shall take whatever measures are necessary to insure that floor load limitations are not exceeded in the demised premises; and

(f)     all curtains and other window treatments visible from the exterior of the Building shall be off-white in color.

## ARTICLE VII

### Repairs and Alterations

Section 1.     The Lessee shall keep the demised premises in a neat, clean, sanitary condition and in good repair, reasonable wear and tear or damage by fire or other casualty excluded, including without limitation, all electrical, plumbing, gas, heating, air-conditioning, and sewage facilities, all sprinklers, fixtures and interior walls, floors, ceilings, signs (including exterior signs where permitted) and all interior building appliances and similar equipment and the exterior and the interior portions of all windows, window frames, doors, door, frames, and all other glass or plateglass thereon, all of the above to the extent within the demised premises, and, in furtherance hereof, the Lessee shall at all times maintain contracts with professional services (reasonably satisfactory to the Lessor) to perform the normal and routine maintenance required for the heating and air-conditioning facilities at the demised premises.

Section 2.     The Lessor agrees to make any capital repairs or replacements necessary to ensure the proper functioning of the HVAC System during the entire term of the Lease at no cost to the Lessee (except to the extent that any such cost may be included in the common expenses in accordance with Article III, Section 4 above). The Lessor shall keep and maintain in good repair and perform maintenance upon the roof, foundations, exterior walls (exclusive of glass, window frames, windows, doors, door frames and signs, which repairs shall be made by the Lessee), mechanical systems (including, without limitation, plumbing, electrical and gas), common stairways and corridors and all parking areas, driveways, walkways and landscaping on the Lot, except where such repairs are required by reason of any act or negligence by the Lessee, its employees, agents, licensees, suppliers, contracts, or guests. The Lessee shall promptly after notice from the Lessor repair at its own expense any damage to the exterior of the demised premises or to the Building or to the utilities serving the demised premises, caused by any act or negligence by the Lessee, its agents, licensees, suppliers, contractors, or guests. The Lessor shall make repairs (considering the nature and urgency of the repair) for which the Lessor is

10

responsible; provided, however, that the Lessor shall not be liable for a delay in commencement of the making of such repairs or for a delay or failure to complete such repairs where such delay or failure is attributable to strikes or other labor conditions, inability or difficulty in obtaining materials or services, wars, delays due to the weather, or other cause beyond the reasonable control of the Lessor.

Section 3.    The Lessor shall be responsible for the maintenance of the grass and shrubs located on the Lot and shall be responsible for snow removal from the parking areas, driveways and walkways on the Lot and from the driveway located on the All Purpose Easement; provided, however, that the Lessee shall be responsible for, provide, and pay for all hand shoveling and sanding that is required for, the removal of snow from the sidewalks and the entrances of the demised premises.

Section 4.    All costs paid or incurred by the Lessor in performing any of its obligations under this Article VII shall, be included in the Lessor's costs of maintaining and repairing as set forth in Article III, Section 4.

Section 5.    The Lessee shall at the expiration or earlier termination of this Lease remove its goods and effects and peaceably yield up the demised premises, in neat and clean condition and in the same order, repair and condition as at the Commencement Date of the term hereof, or as the same may be put in during the term hereof, reasonable wear and tear and damage from fire or other casualty excepted (provided good maintenance practices are employed), and except for repairs which the Lessor agrees to make as herein provided, and the Lessee shall repair any injury done to the demised premises and the Building by the installation or removal of the Lessee's fixtures or other property.

Section 6.    The Lessee shall have the right at its expense to make such non-structural alterations, improvements or additions to the interior of the demised premises only after first obtaining on each occasion the prior written consent of the Lessor, which consent may not be unreasonably, withheld or delayed. The Lessee shall also be required to obtain the Lessor's prior written consent which may be withheld in the Lessor's sole discretion for any structural alterations, improvements or additions. Any such work shall be made in accordance with all applicable laws and in a good and workmanlike manner and shall not impair the safety of the structure of the Building nor diminish the value of the Building as then constituted. The Lessor will reasonably cooperate with the Lessee, at no cost to the Lessor, in connection with its

11

application for any necessary permit from any applicable municipal or state authorities. The Lessee shall first indemnify the Lessor from any loss or expense relating thereto or the work performed hereunder.

All additions, improvements and fixtures including air-conditioning and lighting equipment (other than the usual trade fixtures, furniture and equipment installed by the Lessee which may be removed from the demised premises without injury thereto) which may be made or installed by the Lessee and which are attached to a floor, wall or ceiling, including any linoleum or other floor covering of similar character, may be removed by the Lessee upon expiration or earlier termination of this Lease if the demised premises can thereby be returned to their original condition without injury thereto, otherwise they shall remain upon the demised premises, and at the expiration on earlier termination of this Lease shall be surrendered with the demised premises as a part thereof. However, the Lessor upon termination of this Lease may require the Lessee to restore the demised premises to their condition at the commencement of this Lease in whole or in part, so long as the removal or restoration of any repairs or alterations was agreed to prior to their undertaking.

Any trade fixtures, furniture and equipment installed by the Lessee shall remain the property of the Lessee and shall be removed by the Lessee from the demised premises prior to the expiration or earlier termination of this Lease, so long as the demised premises can thereby be returned to their original condition.

## ARTICLE VIII
### Utilities

The Lessee shall pay for all separately metered utility services provided to the demised premises including, without limitation, electricity, gas, water, telephone, and sewage charges applicable to the demised premises, and the cost of fuel to heat or air-condition the demised premises. If any utilities consumed and/or used by the demised premises are not metered separately from the utilities consumed and/or used by the remainder of the Building, the Lessee shall pay to the Lessor, upon being billed therefor by the Lessor, the Lessee's Proportionate Share of the cost of such utilities consumed and/or used in the Building. The aforementioned percentage is based on the assumption that such utilities in the demised premises will be used only for ordinary office use purposes. If such utilities are consumed in the demised premises for

12

other purposes or in excessive quantities, the Lessee shall pay to the Lessor, on demand from time to time, the additional charges resulting therefrom as reasonably estimated by the Lessor. The Lessor reserves the right to install separate meters for any such utilities to measure consumption and/or usage in the demised premises.

## ARTICLE IX
### Liability

Section 1.    The Lessee shall save the Lessor harmless and indemnified from all injury, loss, claims or damage of whatever nature to any person or property in or about the demised premises, the Lot and/or the All Purpose Easement, arising from any act, omission or negligence, of the Lessee or the Lessee's subtenants or concessionaires or the employees, agents, contractors, suppliers, licensees, invitees, or customers of any of the foregoing. Upon request of the Lessor, the Lessee shall take over the Lessor's defense in any action related to such matter for which the Lessee has agreed to indemnify the Lessor.

Section 2.    Neither the Lessor nor any agent or employee of the Lessor shall be liable for any damage to the person or property of the Lessee, or of any subtenant, or concessionaire, or of any employee, customer, licensee, invitee, contractor or supplier, or guest of any of the foregoing, except where such damage is attributable to the negligence of the Lessor, its agents or employees.

Section 3.    The Lessee shall maintain during the term of this Lease, at its own expense, comprehensive public liability insurance in responsible companies qualified to do business in Massachusetts which shall insure the Lessor (as a named, insured party) and all persons claiming under the Lessor, as well as lthe Lessee, against all claims for injuries to persons (including death) occurring in or about the demised premises in the amount of at least One Million Dollars ($1,000,000) in the event of injury (or death) of one person and in the amount of at least Three Million Dollars ($3,000,000) for any one accident, and against all claims for damages to or loss of property occurring in or about the demised premises in the amount of at least One Million Dollars ($1,000,000) or such higher amounts of liability insurance coverage as the Lessor shall reasonably require from time to time. All such insurance shall be on an occurrence basis. The Lessee shall furnish the Lessor and Mortgagee with certificates for such insurance prior to the commencement of the term hereof and at least ten (10)

13

days prior to the expiration date of any of such policies. Each such policy shall be non-cancellable with respect to the Lessor's interest without at least thirty (30) days prior written notice to the Lessor.

## ARTICLE X

### Fire Insurance

Section 1.    The Lessor shall maintain fire and extended coverage insurance covering the demised premises and the Building against loss by fire and other similar hazards included within customary building fire and extended coverage insurance policies, in such amounts as to provide for 100% replacement value of the Building as reasonably estimated by the Lessor. The costs of such insurance to be included in the costs referred in Article III, Section 5 hereof.

Section 2.    The Lessee shall, at its own expense, maintain fire and comprehensive casualty insurance of adequate amounts with respect to its own fixtures, merchandise, equipment and other property contained in the demised premises.

## ARTICLE XI

### Signs

The Lessee shall submit to the Lessor, for the Lessor's approval, which shall not be unreasonably withheld or delayed, the design and specifications for one sign identifying the name and business of the Lessee to be erected at the building directory and one sign at the door to the demised premises. Both of Lessee's signs shall conform to the rules and regulations of the Town of Bedford and any other applicable law, rule, ordinance or code, and shall be simple and dignified in appearance and constructed of durable materials, and shall be of a size and style in keeping with other such signs on adjacent or nearby properties.

The Lessee shall maintain and keep in good repair any signs erected by it. The Lessee shall be responsible for any repairs to the demised premises or the Building related to the erection of said signs. The Lessee shall remove all of its signs upon expiration of the term or earlier termination and shall promptly repair any damage related to the erection or removal of said signs.

14

## ARTICLE XII

### Subordination

Section 1.    The Lessee shall, from time to time upon request of the Lessor, subordinate this Lease to any existing and/or future Mortgage (defined below) heretofore or hereafter placed upon the Lot, and to any renewal, modification, replacement or extension of any such Mortgage, and to any and all advances made or to be made thereunder, provided that in the instrument of subordination the Mortgagee agrees, for itself and its successors and assigns that so long as the Lessee shall not be in default under this Lease, the Mortgagee and its successors and assigns will not disturb the peaceful, quiet enjoyment of the demised premises by the Lessee. The Lessee hereby irrevocably appoints the Lessor and any successor or assign as its attorney-in-fact (which appointment is coupled with an interest) to execute and deliver any such instrument of subordination for and on behalf of the Lessee and its successors and assigns. If this Lease is so subordinated, no entry under any such Mortgage or sale for the purpose of foreclosing the same or repossession or other action pursuant to such Mortgage shall be regarded as an eviction of the Lessee or its successors and assigns, constructive or otherwise, or give the Lessee or any successors or assigns any right to terminate this Lease and, upon request, the Lessee agrees to attorn to the Mortgagee or new owner or possessor.

Section 2.    If any Mortgagee elects, by written notice given to the Lessee, to have, this Lease and the interest of the Lessee hereunder superior to any such Mortgage, then this Lease and the interest of the Lessee hereunder shall be deemed superior to any such Mortgage whether this Lease was executed before or after such Mortgage.

Section 3.    The Lessee will, upon request by the Lessor or any Mortgagee, from time to time, execute and deliver to such party (a) an "Estoppel Letter," so-called, in form satisfactory to such party and/or (b) a copy of every notice of default, every notice from any federal, state or local agency regarding violations involving Environmental Laws, every notice of the exercise of the right to remedy referred to in Article XVII, Section 4, every notice of the exercise of any right of termination, and any claim to any abatement of rent, delivered by the Lessee to the Lessor at the same time and in the same manner as to the Lessor and/or (c) an agreement consenting to an assignment of this Lease to such party and acknowledging such assignment.

Section 4.    For purposes hereof, the term "Mortgage" shall mean any real estate mortgages, ground leases, deed of trust, security agreements or indentures affecting the Lot

15

and/or the All Purpose Easement; the term "Mortgagee" shall include the holder of any such real estate mortgage, any ground lessor or any trustees or holders of any such security agreements or indentures.

## ARTICLE XIII
### Self-Help

If the Lessee shall default in the performance or observance of any agreement or condition in this Lease contained on its part to be performed or observed, and shall not cure such default within thirty (30) days after notice from the Lessor specifying the default (or, if such default is not susceptible of being cured in said 30-day period, shall not within said period commence to cure such default and thereafter prosecute the curing of such default to completion with due diligence), the Lessor, may, at its option, without waiving any claim for breach of agreement, at any time thereafter cure such default for the account of the Lessee, and make all necessary payments in connection therewith, including but not limiting the same, to counsel fees, costs or charges of or in connection with any legal action which may have been brought, any amount paid by the Lessor in so doing shall be deemed paid for the account of the Lessee and the Lessee agrees to reimburse the Lessor therefor with interest thereon at the then prevailing annual rate of interest charged by Fleet Bank, N.A. as its prime rate, such sums payable by the Lessee to the Lessor to be deemed additional rent; provided that the Lessor may cure any such default as aforesaid prior to the expiration of said waiting period but after notice to the Lessee, if the curing of such default prior to the expiration of said waiting period is reasonably necessary to protect the real estate or the Lessor's interest therein, or to prevent injury or damage to persons or property.

## ARTICLE XIV
### Waiver of Subrogation

The Lessor and the Lessee each hereby release the other from any and all liability or responsibility to the other (or anyone claiming through or under them by way of subrogation or otherwise) for any loss or damage to property caused by fire or any of the extended coverage or supplementary contract casualties, even if such fire or other casualty shall have been caused by the fault or negligence of the other party, or anyone for whom such party may be responsible,

provided, however, that this release shall be applicable and in force and effect only with respect to loss or damage occurring during such time as the releasor's policies shall contain a clause or endorsement to the effect that any such release shall not adversely affect or impair said policies or prejudice the right of the releasor to recover thereunder, and the Lessor and the Lessee each hereby agree that it shall cause such a clause or endorsement to be included in its policies, if available.

## ARTICLE XV

### Damage by Fire, Etc.

Section 1.      If either the demised premises or the Building shall be damaged or destroyed to the extent of thirty percent (30%) or less on a square footage basis by any cause (whether insured against by the Lessor or not), subject to the first Mortgagee (if any) of the Lot making the hazard insurance loss proceeds available for restoration and the Lessor's receipt of such proceeds for that purpose, the Lessor shall promptly commence and use due diligence to restore the demised premises (excluding any alterations, additions or improvements made by the Lessee pursuant to this Lease) to proper condition for the Lessee's use and occupancy, provided that the Lessor's obligation shall be limited to the amount of insurance proceeds available therefor. If the Lessor informs the Lessee that the insurance proceeds either are insufficient for restoration or are not made available to the Lessor or if the Lessor's restoration of the demised premises is not substantially completed within 180 days after the date that all permits for such restoration work are issued by applicable government authorities (which 180-day period may be extended for such period of time as the Lessor is prevent from proceeding with such restoration for any cause beyond the Lessor's control), the Lessee may terminate this Lease by giving notice to the Lessor thereof within thirty (30) days after such 180-day period, whereupon this Lease shall cease and come to an end without further liability or obligation on the part of either party unless, within such 30-day period, the Lessor completes the restoration work.

Section 2.      If either the demised premises or the Building shall be damaged or destroyed to the extent of more than thirty (30%) percent on a square footage basis by any cause (whether insured against by the Lessor or not), the Lessor or the Lessee may elect by written notice to the other within thirty (30) days after such damage or destruction occurs, whereupon this Lease shall cease and come to an end without further liability or obligation on the part of

17

either party. In the event neither party elects to so terminate this Lease, the Lessor shall restore the demised premises in accordance with the provisions of Section 1 above.

Section 3.    In the event that, the demised premises or the Building are damaged or destroyed by any cause, then, unless this Lease is terminated as above provided, the Lessee, at its own expense and proceeding with all reasonable dispatch, shall repair and replace suitably all trade fixtures, equipment, signs or other property installed by or belonging to the Lessee which shall be damaged or destroyed.

Section 4.    If this Lease is not terminated as above provided, then from and after such damage and until the demised premises are restored as above provided, the rent reserved herein shall abate, either wholly or proportionately, according to the extent that the demised premises have been rendered untenantable by such damage or destruction.

## ARTICLE XVI

### Eminent Domain

Section 1.    If, as a result of any taking by eminent domain (which shall be deemed to include a voluntary conveyance in lieu of a taking), the total floor area remaining in the demised premises shall be reduced to less than seventy-five (75%) percent of the total floor area in the demised premises at the commencement of the term hereof, or if the Lessee's access to the demised premises or parking area or the availability to the Lessee of adequate parking is materially affected, then at the election of the Lessor or the Lessee, exercisable by written notice given to the other within forty-five (45) days after the date of the filing of the notice of such taking, this Lease may be terminated as of the date when the Lessee is required to vacate the demised premises or the portion thereof so taken, notwithstanding that the entire interest of the party exercising such option may have been divested by such taking, and if following any such taking neither the Lessee nor the Lessor terminates this Lease, then:

(a)    The Lessor, at the Lessor's expense, but only to the extent of the award the Lessor received for any such taking, and proceeding with all reasonable dispatch shall do such work as may be required to put what may remain of the demised premises in proper condition for the conduct of the Lessee's business. If the award received by the Lessor on account of the taking is insufficient, as determined by a licensed architect engaged by the Lessor, to enable the Lessor to

18

make all necessary repairs, or if the Lessor elects not to make such repairs, then the Lessee shall have the right to terminate this Lease.

(b)     The Lessee, at the Lessee's expense and proceeding with all reasonable dispatch, shall make such alterations, repairs and replacements of the trade fixtures, equipment, signs or other property installed by or belonging to the Lessee, as may be necessary to put the remainder of the demised premises in proper condition for the Lessee's business. The Lessor will have no responsibility for making the repairs or replacements mentioned in this subpart (b).

(c)     From and after the date on which the Lessee is required to vacate the portion of the demised premises so taken, a just proportion of the rent payable herein according to the nature and extent of the taking of the demised premises shall be abated until the demised premises are restored to such condition that the Lessee can commence business therein, and from and after the date on which the Lessor shall restore the demised premises in the manner above provided the rent shall be reduced in the proportion that the floor area of the portion of the demised premises so taken bears to the floor area of the demised premises at the commencement of the term hereof. Rent will also be abated, in an amount to be determined through arbitration under Article XXII, Section 14, to the extent that access to the demised premises or parking areas or the availability to the Lessee of adequate parking is interfered with.

Section 2.     In the event of a taking, as defined herein, of all or any part of the Lot, the All Purpose Easement or Building, and even though such taking leaves at least seventy-five percent (75%) or more of the floor area of the demised premises remaining, the Lessor shall nonetheless have the right to terminate this Lease by notifying the Lessee of the Lessor's election to terminate within forty-five (45) days after the final determination of the amount of the award, or to restore any part of the demised premises so taken, and in the case of such restoration, the rent shall be abated to the extent provided above.

Section 3.     The Lessor reserves and excepts all rights to damages to the Lot, the All Purpose Easement, the Building, the demised premises and the leasehold hereby created, or awards with respect thereto, then or thereafter accruing, by reason of any taking by eminent domain or by reason of anything lawfully done or required by any public authority, and the Lessee grants to the Lessor all the Lessee's rights, if any, to such damages except with respect to the value of its personal property or any relocation expenses, either of which may be compensable by a separate award as provided by statute, and shall execute and deliver to the

19