16.8. <u>Assignment</u>. Purchaser shall not have the right to assign the Agreement without Seller's prior written consent, which consent may be given or withheld in Seller's sole and absolute discretion; provided that Purchaser shall in no event be released from any of its obligations or liabilities hereunder as a result of any such assignment. Notwithstanding anything to the contrary stated above, Purchaser shall be permitted to assign its rights under this Agreement without Seller's consent to any entity in which Purchaser is a manager or general partner, or any entity in which one or more of the principals of Purchaser shall have a controlling interest, provided that, (i) assignee assumes Purchaser's obligations under this Agreement pursuant to a written agreement in form and substance reasonably acceptable to Seller; (ii) Seller receives a copy of such assignment and assumption agreement on or before three (3) business days after the execution thereof (and in no event less than three (3) business days prior to Closing) and reaffirms all of the representations and warranties of Purchaser herein and (iii) Purchaser shall remain liable for, and shall not be released from the performance of Purchaser's obligations under this Agreement after such assignment. Whenever reference is made in this Agreement to Seller or Purchaser, such reference shall include the successors and assigns of such party under this Agreement.

16.9. <u>Interpretation</u>. This Agreement shall not be construed more strictly against one party than against the other merely by virtue of the fact that it may have been prepared by counsel for one of the parties, it being recognized that both Seller and Purchaser have contributed substantially and materially to the preparation of this Agreement.

16.10. <u>Entire Agreement</u>. This Agreement and the Exhibits attached hereto contain the final and entire agreement between the parties hereto with respect to the sale and purchase of the Property and are intended to be an integration of all prior negotiations and understandings. Purchaser, Seller and their agents shall not be bound by any terms, conditions, statements, warranties or representations, oral or written, not contained herein. No change or modifications to this Agreement shall be valid unless the same is in writing and signed by the parties hereto. Each party reserves the right to waive any of the terms or conditions of this Agreement, which are for their respective benefit, and to consummate the transaction contemplated by this Agreement in accordance with the terms and conditions of this Agreement, which have not been so waived. Any such waiver must be in writing signed by the party for whose benefit the provision is being waived.

16.11. <u>Severability</u>. If any one or more of the provisions hereof shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

16.12. <u>Survival</u>. Except as otherwise specifically provided for in <u>Sections 4.2, 5.1, 5.2, 5.3, 5.4, 7.3, 7.4, 8.3, 8.4, 13.1, 13.2, 14.1, 15.1, 16.15</u> and <u>16.16</u> (collectively, the "**Surviving Termination Obligations**"), the provisions of this Agreement and the representations and warranties herein shall not survive after the conveyance of title and payment of the Purchase Price but be merged therein.

16.13. <u>Exhibits</u>.    <u>Exhibits A</u> through <u>I</u> attached hereto are incorporated herein by reference.

**16.14. Time.** Time is of the essence in the performance of each of the parties' respective obligations contained herein.

**16.15. Limitation of Liability.** Seller's liability for damages arising out of any breach of the terms, covenants, conditions of this Agreement or the representations and warranties of Seller contained herein, or arising out of or from the transactions contemplated hereby, shall be limited to Five Hundred Thousand Dollars ($500,000.00), provided however, that such limitation shall not apply in the event of any intentional tortious wrongdoing by Seller. The obligations of Seller are binding only on Seller and Seller's assets and shall not be personally binding upon, nor shall any resort be had to, the private properties of any of the partners, officers, directors, shareholders or beneficiaries of Seller, or of any partners, officers, directors, shareholders or beneficiaries of any partners of Seller, or of any of Seller's employees or agents and any liability of Seller hereunder and under the documents executed and delivered by Seller at Closing shall be expressly limited as set forth in Sections 7.3, 8.2, 8.3 and 13.1 of this Agreement. All documents to be executed by Seller shall also contain the foregoing exculpation.

**16.16. Prevailing Party.** Should either party employ an attorney to enforce any of the provisions hereof, (whether before or after Closing, and including any claims or actions involving amounts held in escrow), the non-prevailing party in any final judgment agrees to pay the other party's reasonable expenses, including reasonable attorneys' fees and expenses in or out of litigation and, if in litigation, trial, appellate, bankruptcy or other proceedings, expended or incurred in connection therewith, as determined by a court of competent jurisdiction. The provisions of this Section 16.16 shall survive Closing and/or any termination of this Agreement.

**16.17. Escrow Agreement.**

**16.17.1. Instructions.** Purchaser and Seller each shall promptly deposit a copy of this Agreement executed by such party (or either of them shall deposit a copy executed by both Purchaser and Seller) with Escrow Agent, and, upon receipt of the Deposit from Purchaser, Escrow Agent shall immediately execute this Agreement where provided below. This Agreement, together with such further instructions, if any, as the parties shall provide to Escrow Agent by written agreement, shall constitute the escrow instructions. If any requirements relating to the duties or obligations of Escrow Agent hereunder are not acceptable to Escrow Agent, or if Escrow Agent requires additional instructions, the parties hereto agree to make such deletions, substitutions and additions hereto as counsel for Purchaser and Seller shall mutually approve, which additional instructions shall not substantially alter the terms of this Agreement unless otherwise expressly agreed to by Seller and Purchaser.

**16.17.2. Liability of Escrow Agent.** The parties acknowledge that the Escrow Agent shall be conclusively entitled to rely, except as hereinafter set forth, upon a certificate from Purchaser or Seller as to how the Deposit (which, for purposes of this Section shall be deemed to also include any other escrowed funds held by the Escrow Agent pursuant to this Agreement) should be disbursed. Any notice sent by Seller or Purchaser (the "**Notifying Party**") to the Escrow Agent shall be sent simultaneously to the other noticed parties pursuant to Section 16.1 herein (the "**Notice Parties**"). If the Notice Parties do not object to the Notifying Party's notice to the Escrow Agent within ten (10) days after the Notice Parties' receipt of the Notifying Party's certificate to the Escrow Agent, the Escrow Agent shall be able to rely on the

same. If the Notice Parties send, within such ten (10) days, written notice to the Escrow Agent disputing the Notifying Party's certificate, a dispute shall exist and the Escrow Agent shall hold the Deposit as hereinafter provided. The parties hereto hereby acknowledge that Escrow Agent shall have no liability to any party on account of Escrow Agent's failure to disburse the Deposit if a dispute shall have arisen with respect to the propriety of such disbursement and, in the event of any dispute as to who is entitled to receive the Deposit, disburse them in accordance with the final order of a court of competent jurisdiction, or to deposit or interplead such funds into a court of competent jurisdiction pending a final decision of such controversy. The parties hereto further agree that Escrow Agent shall not be liable for failure to any depository and shall not be otherwise liable except in the event of Escrow Agent's gross negligence or willful misconduct. The Escrow Agent shall be reimbursed on an equal basis by Purchaser and Seller for any reasonable expenses incurred by the Escrow Agent arising from a dispute with respect to the Deposit. The obligations of each of Purchaser and Seller with respect to the Escrow Agent are intended to be binding only on such party and such party's assets and shall not be personally binding upon, nor shall any resort be had to, the private properties of any of the partners, officers, directors, shareholders or beneficiaries of such party, or of any partners, officers, directors, shareholders or beneficiaries of any partners of such party, or of any of such party's employees or agents.

**16.17.3. Waiver of Purchaser.** Escrow Agent's capacity as escrowee of the Deposit shall not preclude the Escrow Agent from acting as legal counsel to Seller, and Purchaser hereby waives the right to object thereto.

**16.18. No Recording.** Neither this Agreement nor any memorandum or short form hereof shall be recorded or filed in any public land or other public records of any jurisdiction, by either party and any attempt to do so may be treated by the other party as a breach of this Agreement.

**16.19. Waiver of Trial by Jury.** The respective parties hereto shall and hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other on any matters whatsoever arising out of or in any way connected with this Agreement, or for the enforcement of any remedy under any statute, emergency or otherwise.

**16.20. All Property Only.** Seller and Purchaser hereby acknowledge that the Property is to be purchased in its entirety. In furtherance thereof, in the event that any condition precedent is not satisfied with respect to less than all of the Property, or any other condition arises with respect to less than all of the Property which entitles Purchaser to exercise its remedies under this Agreement, Purchaser shall have no right to purchase less than all of the Property.

**16.21. 1031 Exchange.** Each party acknowledges that the other may elect to convey or acquire, as applicable, all or a portion of the Property in connection with the completion of a tax-deferred exchange under Section 1031 of the Internal Revenue Code of 1986. Each party hereby agrees to take such steps as the other may reasonably require in order to complete the tax-deferred exchange including, without limitation, accepting or delivering payment of all or a portion of the Purchase Price from or to a third party, provided that the party cooperating with the other's 1031 exchange shall not be required to incur any additional expense or liability as a result thereof. No

party shall have any obligation to take title to any real property that is not the subject of this Agreement in order to facilitate any 1031 exchange.

16.22. **Supersedes Other Agreements**. This Agreement supersedes any and all prior agreements made by and between any or all of the parties hereto with respect to the Property, including, without limitation the Purchase Agreement, and all such prior agreements are void and without recourse to the parties.

[SIGNATURES ON THE FOLLOWING PAGE]

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement under seal on the date or dates set forth below.

**SELLER:**

OPTA FOOD INGREDIENTS, INC.

By: _____

Name: Arthur J. McEvily

Its: President

Tax I.D. # 04-3117634

**PURCHASER:**

_____

Laxman S. Desai

Tax I.D. # _____ 455 - 94 - 4255 _____

**CONSENTED AND AGREED TO:**

TOXIKON CORPORATION

By: _____

Name: Layman S. DeSai

Its: President

The Escrow Agent hereby executes this Agreement for the sole purpose of acknowledging receipt of the Initial Option Deposit and its responsibilities hereunder and to evidence its consent to serve as Escrow Agent in accordance with the terms of this Agreement.

**ESCROW AGENT:**

**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**

By:_____
Name:
Its: Member

## LIST OF EXHIBITS

EXHIBITS

Exhibit A - Legal Description
Exhibit B - Due Diligence Documents to be Delivered by Seller
Exhibit C - Form of General Assignment
Exhibit D - Quitclaim Deed
Exhibit E - Non-Foreign Entity Certificate
Exhibit F - Contracts
Exhibit G - Leases
Exhibit H - Form of Letter to Tenants
Exhibit I - Title Commitment

## EXHIBIT A

### LEGAL DESCRIPTION

The Land in Bedford, Middlesex County, Commonwealth of Massachusetts, known as and numbered 25 Wiggins Avenue, Bedford, Massachusetts, shown as Lot 1 on a Plan of Land dated August 25, 1997, by Joseph W. Moore Co., Land Surveyors, Civil Engineers, entitled "Compiled Plan of Land in Bedford, Mass. (Middlesex County) for Griffith Realty Trust" duly recorded at the Middlesex County (Southern District) Registry of Deeds in Book 13301, Page 558, and together bounded and described according to said Plan as follows:

| Northwesterly and Westerly: | by Wiggins Avenue by two lines measuring respectively 47.00 feet and 358.26 feet; |
|---|---|
| Northwesterly: | by land now or formerly of Robert W. Connelly 654.38 feet; |
| Northeasterly: | by land now or formerly of said Robert W. Connelly 157.48 feet; |
| Westerly: | by land now or formerly of said Robert W. Connelly 218 $\pm$ feet; |
| Northerly | by land now or formerly of River 200 feet; |
| Southeasterly Southerly Northeasterly and Southeasterly: | by the former center line of the Shawsheen River, by lands now or formerly Piantedosi, Flores, McNamara, Callahan & Moore 780$\pm$ feet; |
| Southwesterly: | by land now or formerly of said Griffith Bedford Realty Trust 382$\pm$ feet; |
| Southeasterly: | by land of said Griffith Bedford Realty Trust |

Containing 8.4 $\pm$ acres according to said plan.

A-1

## EXHIBIT B

## DUE DILIGENCE DOCUMENTS

Seller shall deliver copies of the following items to Purchaser (or make certain items available to Purchaser at the Property or at the offices of the property manager), to the extent such items are in the possession of or available to the Seller and/or property manager:

1. All leases and occupancy agreements.

2. All management, maintenance, service or other contracts.

3. Current title insurance policy, together with any title exception documents, and survey.

4. All site assessment reports, environmental reports, soil reports, plans, as-built plans, engineering studies.

5. All permits, approvals and licenses.

6. Any building inspection reports

7. Any certificates of occupancy

8. Any traffic studies

9. Any zoning/permitting opinions

B-1

TRA 1828469_3.DOC

## EXHIBIT C

### GENERAL ASSIGNMENT

**THIS GENERAL ASSIGNMENT** (the "Bill of Sale") is made as of the _____ day of [    ], 2003 by and between Opta Food Ingredients, Inc., a Delaware corporation ("Seller"), and Laxman S. Desai, an individual resident of Massachusetts ("Purchaser").

### KNOW ALL MEN BY THESE PRESENTS:

Concurrently with the execution and delivery hereof, pursuant to a certain Option Agreement dated as of September 15, 2003 (the "Agreement") between Seller and Purchaser, Seller is conveying to Purchaser all of Seller's right, title and interest in and to the real property described on Exhibit A attached hereto and made a part hereof (the "Land") and in and to the building, parking areas and other structures and improvements located on the Land (collectively, the "Improvements") commonly known as and numbered 25 Wiggins Avenue, Bedford, Massachusetts. The Land and the Improvements are hereinafter sometimes collectively referred to as the "Property."

It is the desire of Seller to hereby sell, assign, transfer, convey, set-over and deliver to Purchaser all of Seller's right, title and interest in and to the Assigned Property (as hereinafter defined).

1.    Bill of Sale and Assignment.

Seller does hereby sell, assign, transfer, set-over and deliver unto Purchaser, its successors and assigns, with special warranty of title and subject to the limitations contained in Section 8.2 of the Agreement, all right, title and interest of Seller in and to:

a.    . All machinery, equipment and fixtures, if any, owned by Seller and used in connection with the Land as of the date hereof (the "Personal Property"), but specifically excluding therefrom any trade fixtures of Seller, including without limitation, and equipment and machinery that is used in connection with Seller's business operations at the Property; and

b.    Seller's interest, if any, in and to any service, equipment, supply and maintenance contracts listed on Exhibit B attached hereto (the "Contracts"), all leases of the Land or the Improvements listed on Exhibit C attached hereto (the "Leases"), all plans, specifications and architectural or other drawings related to the Property (the "Plans and Specifications") and any guarantees, licenses, approvals, certificates, permits and warranties relating to the Real Property or the Personal Property, to the extent assignable (the "Intangible Property"); and

c.    All deposits, security or other considerations, if any, held by Seller as security for or in connection with the rights and benefits accruing to Seller under the Contracts assigned.

C-1

TRA 1828469_3.DOC

TO HAVE AND TO HOLD the Personal Property, the Contracts, the Leases, the Plans and Specifications and the Intangible Property (collectively, the "Assigned Property") unto Purchaser, its successors and assigns, forever.

2.    Assumption.

Purchaser accepts the foregoing assignment and assumes and agrees to be bound by and to perform and observe all of the obligations, covenants, terms and conditions to be performed or observed under the Assigned Property arising on or after the date hereof. Purchaser further agrees to indemnify Seller and hold Seller harmless from and against any and all claims, liens, damages, demands, causes of action, liabilities, lawsuits, judgments, losses, costs and expenses (including, without limitation, attorneys' fees and expenses) (collectively, the "Losses") asserted against or incurred by Seller by reason of or arising out of any failure by Purchaser to perform or observe the obligations, covenants, terms and conditions assumed by Purchaser hereunder arising in connection with the Assigned Property and related to the period on or after the date hereof.

3.    Seller's Indemnity.

Seller agrees to indemnify Purchaser and hold Purchaser harmless from and against any and all Losses asserted against or incurred by Purchaser by reason of or arising out of any failure by Seller to perform or observe the obligations, covenants, terms and conditions of Seller arising in connection with the Assigned Property and related to the period before the date hereof.

4.    Acceptance of Property.

Purchaser hereby accepts the Assigned Property on an "AS IS, WHERE IS" AND "WITH ALL FAULTS" CONDITION AND BASIS and acknowledges that the Assigned Property has been assigned, conveyed and transferred hereunder without any representation or warranty by Seller whatsoever, except only for those limited representations and warranties contained in Article VII of the Agreement, and, to the extent permitted by applicable law, Purchaser expressly disclaims any representation or warranty implied by law.

5.    Limitation of Liability.

Seller's liability for damages arising out of any breach of this General Assignment by Seller shall be limited to Five Hundred Thousand Dollars ($500,000.00), provided however, that such limitation shall not apply in the event of any intentional tortious wrongdoing by Seller. The obligations of Seller are intended to be binding only on Seller and Seller's assets and shall not be personally binding upon, nor shall any resort be had to, the private properties of any of the partners, officers, directors, shareholders or beneficiaries of Seller, or of any partners, officers, directors, shareholders or beneficiaries of any partners of Seller, or of any of Seller's employees or agents.

6.    Exclusions from Personal Property.

It is hereby acknowledged by the parties that the Assigned Property shall not include claims relating to any real property tax refunds or rebates for periods accruing prior to the date

C-2

hereof, existing insurance claims, and any existing claims against previous tenants of the Property, which claims are hereby reserved by Seller.

7.    Counterpart Copies.

This Bill of Sale may be executed in two or more counterpart copies, all of which counterparts shall have the same force and effect as if all parties hereto had executed a single copy of this Bill of Sale.

IN WITNESS WHEREOF, the parties have caused this Bill of Sale to be executed as of the date first written above.

**SELLER:**

OPTA FOOD INGREDIENTS, INC.

By:_____
Name:
Its:

**PURCHASER:**

_____
Laxman S. Desai

C-3

## EXHIBIT D

## QUITCLAIM DEED

OPTA FOOD INGREDIENTS, INC., a Delaware corporation having its usual place of business at 25 Wiggins Avenue, Bedford, Massachusetts 01730 ("Grantor"), for consideration of Four Million Eight Hundred Fifty Thousand Dollars ($4,850,000.00) paid, grants to and LAXMAN S. DESAI, an individual resident of Massachusetts ("Grantee"), with QUITCLAIM COVENANTS, the land, and the buildings and improvements thereon, in Bedford, Middlesex County, Massachusetts, and more particularly described in Exhibit A attached hereto.

Said property is conveyed with the benefit of and subject to all easements, restrictions, agreements and other matters of record, insofar as now in force and applicable, and further subject to real estate taxes for the current fiscal period not yet due and payable, which the Grantee, by its acceptance hereof, hereby agrees to assume and pay.

[This conveyance does not represent a sale of all or substantially all of the Grantor's assets within the Commonwealth of Massachusetts.]

For Grantor's title, see deed of _____ dated _____ and recorded with the Middlesex South District Registry of Deeds in Book _____, Page _____.

### PROPERTY ADDRESS
25 Wiggins Avenue
Bedford, Massachusetts 01730

*[Signature on following page]*

D-1

TRA 1828469_3.DOC

IN WITNESS WHEREOF, Grantor has caused this Deed to be executed as of the _____ day of _____, 2003.

OPTA FOOD INGREDIENTS, INC.

By:_____
Name:
Its:

## COMMONWEALTH OF MASSACHUSETTS

County of _____                                                    _____, 2003

Then personally appeared the above-named _____, the _____ of Opta Food Ingredients, Inc., and acknowledged the foregoing to be his/her free act and deed and the free act and deed of Opta Food Ingredients, Inc., before me,

_____
Notary Public
My Commission Expires:

D-2

TRA 1828469_3.DOC

## EXHIBIT E

## NON-FOREIGN ENTITY CERTIFICATE

Section 1445 of the Internal Revenue Code provides that a transferee of a U.S. real property interest must withhold tax if the transferor is a foreign person. To inform the transferee that withholding of tax is not required upon the disposition of a U.S. real property interest by Opta Food Ingredients, Inc., a Delaware corporation ("Transferor"), the Transferor hereby certifies the following:

1.    Transferor is not a foreign corporation, foreign partnership, foreign trust or foreign estate (as those terms are defined in the Internal Revenue Code and Income Tax Regulations);

2.    Transferor's U.S. employer identification number is 04-3117634; and

3.    Transferor's office address is:

    25 Wiggins Avenue
    Bedford, MA 01730

Transferor understands that this certification may be disclosed to the Internal Revenue Service and that any false statement made within this certification could be punished by fine, imprisonment, or both.

Under penalties of perjury the undersigned declares that he has examined this certification and that to the best of his knowledge and belief it is true, correct and complete, and the undersigned further declares that he has the authority to sign this document on behalf of the Transferor.

### TRANSFEROR:

OPTA FOOD INGREDIENTS, INC.

By:_____
Name:
Its:

F-1

## EXHIBIT F

## CONTRACTS

1.    Security/fire alarm monitoring [Sonitrol]

2.    HVAC service [Siemens]

3.    snow plowing/landscaping

4.    pest control

5.    wastewater

6.    building cleaning

7.    window cleaning

8.    trash removal

9.    plant maintenance

F-1

# EXHIBIT G

## LEASES

None.

TRA 1828469_3.DOC

## EXHIBIT H

## FORM OF LETTER TO TENANTS

_____, 2003

CERTIFIED MAIL,
RETURN RECEIPT REQUESTED

Dear Tenant:

We are pleased to advise you that the building in which your premises are located at 25 Wiggins Avenue, Bedford, Massachusetts has been sold by OPTA FOOD INGREDIENTS, INC. (the "Seller") to LAXMAN S. DESAI, an individual resident of Massachusetts (the "Purchaser") effective as of the date set forth above. Your lease agreement has been assigned to and accepted by Purchaser and Purchaser has agreed to assume all responsibility for security deposits currently held under your lease.

All future correspondence relating to your tenancy, as well as rent checks and other charges, should be made payable and mailed to _____ .

The Purchaser looks forward to working with you in the operation of this Property.

Very truly yours,

**SELLER:**

OPTA FOOD INGREDIENTS, INC.

By:_____
Name:
Its:

**PURCHASER:**

_____
Laxman S. Desai

H-1

TRA 1828469_3.DOC

# EXHIBIT I

## TITLE COMMITMENT

*[attached]*

TRA 1828469v3

TRA 1828469_3.DOC

# Fidelity National Title
### INSURANCE COMPANY OF NEW YORK

File No. 03-0094

## COMMITMENT FOR TITLE INSURANCE

### Schedule A

1.  Effective Date: September 9, 2003

2.  Policy or Policies to be issued:

    Amount
(a)  __x___ ALTA Owner's Policy - 1992 (10-17-92)        STBD
     _____ ALTA Leasehold Owner's Policy - 1992 (10-17-92)
     Proposed Insured:  To Be Determined

(b)  __x___ ALTA Loan Policy - 1992 (10-17-92)           $ 4,850,000.00
     _____ ALTA Leasehold Loan Policy - 1992 (10-17-92)
     Proposed Insured: To Be Determined , its successors and assigns as their interest may appear

3.  The estate or interest in the land described or referred to in this commitment and covered herein is: Fee Simple

4.  Title to the estate or interest in said land is at the effective date hereof vested in: CIPTA Food Ingredients, Inc.

5.  THE LAND REFERRED TO IN THIS COMMITMENT IS DESCRIBED AS FOLLOWS:

    All that certain parcel of land with the buildings thereon situated at 25 Wiggins Avenue, in the City/Town of Bedford, County of Middlesex, State of Massachusetts, and is more particularly described in Exhibit A attached hereto and made a part hereof.

    For title see deed of Springfield Institution for Savings dated August 19, 1993 recorded at Book 23561, Page 384.

    Note:  Recorded instruments referred to herein are recorded with Middlesex So. District Registry of Deeds.

Countersigned

BY _____
Tom Mitchell/Authorized Signatory

F:\FIDELITY\DIRECT\2003\03-0094\commit.wpd

**Fidelity National Title**
INSURANCE COMPANY OF NEW YORK

File No. 03-0094

## COMMITMENT FOR TITLE INSURANCE

Schedule B I
(Requirements)

The following are the requirements to be complied with:

Item (a) Payment to or for the account of the grantors or mortgagors of the full consideration for the estate or interest to be insured.

Item (b) Proper instrument(s) creating the estate or interest to be insured must be executed and fully filed for record to-wit:

1.   Duly authorized and executed Deed from OPTA Food Ingredients, Inc. to To Be Determined.

2.   Certificate stating that the Officers executing the Deed/Mortgage in the name of the Corporation are the incumbent Officers and as such are empowered by the Articles of Organization to convey/mortgage the insured premises. Said Vote of Directors/Certificate to be recorded/filed.

3.   If the Corporation will be conveying all or substantially all of its assets in Massachusetts, other than in the ordinary course of business, a Director's Vote is required (unless the Deed is signed by a President or Vice President AND Treasurer or Assistant Treasurer) AND a shareholder's authorization is required. Said Vote of Directors/Certificate and Vote of Stockholders/Certificate to be recorded/filed.

4.   A Corporate Excise tax waiver pursuant to M.G.L. Ch. 62C §52must be obtained and recorded if the proposed conveyance is a conveyance of all or substantially all of the assets of OPTA Food Ingredients, Inc. within the Commonwealth of Massachusetts!

5.   Duly authorized, executed and recorded/filed Mortgage from To Be Determined to To Be Determined securing its loan.

6.   Municipal lien certificate to be provided, and all outstanding real estate taxes, water, sewer and other municipal charges to be paid at or prior to closing.

     NOTE: Municipal lien certificate(s) to be recorded with Middlesex So. District Registry of Deeds.

7.   Provide satisfactory affidavit as to parties in possession and mechanics liens.

8.   Provide satisfactory survey and surveyor's report.

9.   The actual value of the estate or interest to be insured must be disclosed to the Company and entered as the amount of the Policy to be issued. Until the amount of the policy to be issued is entered as aforesaid and the appropriate premium paid, the Applicant for this Commitment, and every other person or entity relying on this Commitment is on notice that the total liability of the Company of account of this Commitment shall not exceed $10,000.00.

FORM 5STG-BI(6/93)                Page 2 of 5

## Fidelity National Title
INSURANCE COMPANY OF NEW YORK

File No. 03-0094

### COMMITMENT FOR TITLE INSURANCE

10.   Remittance of title insurance premium, title exam charges and other related expenses.

11.   The Company may make other requirements or exceptions upon its review of the proposed documents creating the estate or interest to be insured or otherwise ascertaining the details of the transaction.

12.   Discharge and/or termination of the following loan documents:

   a.   Mortgage and Security Agreement with Assignment of Rents by OPTA Food Ingredients, Inc. To Harris Trust and Savings Bank, dated February 21, 2003 and recorded on May 2, 2003 as Instrument No. 1777.

   b.   UCC-1 Financing Statement from OPTA Food Ingredients, Inc. to Harris Trust and Savings Bank and recorded on April 14, 2003 as Instrument No. 554.

## Fidelity National Title
INSURANCE COMPANY OF NEW YORK

File No. 03-0094

## COMMITMENT FOR TITLE INSURANCE

### Schedule B II
(Exceptions)

Schedule B of the policy or policies to be issued will contain exceptions to the following matters unless the same are disposed of to the satisfaction of the Company.

I.      Defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the public records or attaching subsequent to the effective date hereof but prior to the date the Proposed Insured acquired for value of record the estate or interest or mortgage thereon covered by this Commitment.

2.      Rights or claims of parties in possession.

3.      Such state of facts subsequent to Plan of Survey dated October 26, 1992 as would be idsclosed by a current survey and inspection of the premises.

4.      Any lien, or right to a lien, for services, labor or materials heretofore or hereafter furnished, imposed by law and not shown by the public records.

5.      Such matters as would be disclosed by a current certificate of municipal liens.

Note (i):       Items 2 and 4 will be deleted upon receipt of a satisfactory affidavit as to parties in possession and mechanics' liens. Item 3 will be deleted upon receipt of a satisfactory updated survey and surveyor's report. Item 5 to be revised upon receipt of certificate of municipal liens.

6.      Lis Pendens by the United States of America for the condemnation for a perpetual easement recorded at Book 8221, Page 127 and Judgement on the Declaration of Taking recorded at Book 8322, Page 130.

7.      Sewer easement granted to the Town of Bedford recorded at Book 10692, Page 134.

8.      Taking and laying out of Wiggins Avenue as a public way recorded at Book 11370, Page 284.

9.      License by the Commonwealth of Massachusetts to construct and maintain a dike and two outlet structures in the Shawsheen River recorded at Book 13334, Page 162.

10.     Easement shown on a plan recorded at Book 13301, Page 558.

11.     Rights of the public and title to that portion of the premises located within the bounds of the Shawsheen river.

12.     Assignment Assumption of Leases and Tenancies by Springfield Institution for Savings and OPTA Food Ingredients, Inc., dated August 19, 1993, recorded at Book 23561, Page 394.

## Fidelity National Title
INSURANCE COMPANY OF NEW YORK

File No. 03-0094

## COMMITMENT FOR TITLE INSURANCE

13. Survey entitled "ALTA/ACSM Land Title Survey Plan of Land in Bedford, Mass. (Middlesex Court), Prepared For: Opta Foods, Inc., Scale; 40 feet to an inch", dated October 26, 1992, reveals the following:

    (a) Overhead wires, transformer and electric conduit in northwesterly portion of the premises. Telephone conduit along southerly limits of premises servicing premises and Lot 2; conduit is outside of All Purpose Easement in places.

    (b) Sign encroaches into Wiggins Avenue in southwest corner of premises.

14. Declaration of Restrictions dated April 3, 1970 recorded at Book 11817, Page 293 as affected by Terminations of Prior Restrictions recorded at Book 23561, Pages 437, 438, 439 and 441.

15. Reciprocal Easement Agreement by and between Springfield Institution for Savings and OPTA Food Ingredients, Inc. dated August 17, 1993 and recorded at Book 23561, Page 443.

For Informational purposes only:

1. Order of Conditions under the Wetlands Protection Act (File Number 103-31) recorded at Book 13296, page 52 as affected by Certificate of Completion recorded on January 6, 1993 at Book 22865, Page 269.

2. Notice of Variance by the Town of Bedford Board of Appeals recorded at Book 13538, Page 51.

3. Order of Conditions under the Wetlands Protection Act (File Number 103-31) recorded at Book 13535, Page 691 as affected by Certificate of Completion recorded at Book 14463, Page 388.

4. Order of Conditions under the Wetlands Protection Act (File Number 103-31) recorded at Book 14171, Page 231 as affected by Certificate of Completion recorded at Book 14228, Page 315.

5. Order of Conditions under the Wetland Protection Act (DEP File No. 103-310) recorded at Book 23124, Page 339.

6. Decision by the Town of Bedford Board of Appeals recorded at Book 23649, page 42.

7. Order of Conditions by the Bedford Conservation Commission recorded at Book 23885, Page 251.

## EXHIBIT A

The land in Bedford, Middlesex County, Massachusetts, known as and numbered 25 Wiggins Avenue, Bedford, Massachusetts, shown as Lot 1 on a Plan of Land dated August 25, 1977, by Joseph W. Moore Co., Land Surveyors, Civil Engineers, entitled "Compiled Plan of Land in Bedford, Mass. (Middlesex County) for Griffith Realty Trust" duly recorded with Middlesex South District Registry of Deeds, Book 13301, Page 558, and together bounded and described according to said Plan as follows:

NORTHWESTERLY and WESTERLY by Wiggins Avenue by two lines measuring respectively 47.00 feet and 358.26 feet;

NORTHWESTERLY by land now or formerly of Robert W. Connelly 654.38 feet;

NORTHEASTERLY by land now or formerly of said Robert W. Connelly 157.48 feet;

WESTERLY by land now or formerly of said Robert W. Connelly 218± feet;

NORTHERLY by land now or formerly of Rivet 200 feet;

SOUTHEASTERLY, SOUTHERLY, NORTHEASTERLY AND SOUTHEASTERLY by the former center line of the Shawsheen River, by lands now or formerly of Piantedosi, Flores, McNamara, Callahan & Moore 780± feet;

SOUTHWESTERLY by land now or formerly of said Griffith Bedford Realty Trust 362± feet;

SOUTHEASTERLY by land of said Griffith Bedford Realty Trust 255 feet;